[Civ. No. 16249. Second Dist., Div. One. July 14, 1948.]

LORENE HAIRSTON, Respondent, v. STUDIO AMUSEMENTS, LTD. (a Limited Partnership) et al., Appellants.

Bauder, Veatch & W. I. Gilbert and Robert E. Ford for Appellants.

S. L. Kurland for Respondent.

DORAN, J.—This action arose out of an injury sustained by the respondent while roller skating at appellants' Hollywood Roller Bowl on the evening of March 4, 1946. Plaintiff's cause of action was predicated on allegations of negligence in failing to "secure sufficient or any supervision or protection for the plaintiff"; more specifically, in failing to have a sufficient number of guards present to prevent reckless skating by other patrons, and by reason of the failure of the guards present to take any action or precautions after respondent had fallen and lay helpless on the floor.

The dimensions of the appellants' skating rink are 100 feet by 200 feet, and a central portion approximately 50x100 feet had been marked off for fancy skating and backward skating. However, there was evidence that, three weeks prior to respondent's accident, the floor had been sanded and the

line separating the central portion had been obliterated. The number of skaters present on the floor at the time in question was variously estimated at from 250 to 398, and the number of guards then present was likewise variously placed at from two to four. The record discloses that, after skating for a time with respondent, the witness Janet Endelman saw the respondent lying on the floor approximately 10 or 15 feet from the rail on the south side of the rink. This witness testified that no guards or attendants came over there but that groups of people collected around respondent; that while the witness was kneeling beside plaintiff, a sailor, skating backwards, and apparently pursued by another skater, fell on top of Mrs. Endelman and the respondent. Mrs. Endelman testified that the respondent had been lying on the floor from three to five minutes before the crash, after which the floor manager came over and respondent was carried to the first aid room. Respondent's injuries included a double fracture at the head and neck of the right femur which resulted in a permanent crippling and shortening of the leg; intense pain caused by the injury and by a metal plate inserted to hold the parts together, continuing at the time of trial some 16 months after the injury, and requiring a further operation. After trial by jury, a verdict was rendered in favor of respondent for $25,006.83, and the present appeal is from the judgment entered thereon. As noted in the respondent's brief, there is no complaint that the amount of the verdict was excessive.

The appellants' brief contains but three assignments of errors: (1) "The trial court committed prejudicial error in permitting an expert witness on behalf of respondent to testify as to what are the proper practices and safeguards for the protection of skaters"; (2) prejudicial error "in sustaining an objection to the hypothetical question propounded to (appellants') expert witness"; and (3) prejudicial error in instructing the jury "that appellant did not assume the risk of reckless action of other skaters capable in the exercise of ordinary care, of being prevented by guards who were stationed upon the floor for the protection of the patrons."

■ Appellants' first assignment of error relates to the testimony of one John Niddiffer, floor manager, who, after testifying to several years experience in the operation of skating arenas, was then permitted to state that "The proper safeguard (for protection of skaters) is that you have a sufficient

number of men, and also that those men are capable of performing their duties as guards, and immediately upon any accident a man is to be there immediately to prevent a pileup,'' etc. The witness further stated that with an attendance of 250 people, "it would take a man every 50 feet, plus the floor manager" to handle the crowd and effectuate those objects; or five men besides the manager. The floor manager then testified that on the night in question, "to the best of my memory, there were three (floor guards), including myself." It is contended by appellants "that the trial court, in permitting the lone expert, summoned by the plaintiff, to testify as to what are proper practices in safeguarding skaters, in effect allowed that witness to determine for the jury the ultimate fact in question"; that "in the absence of such testimony no case would have been made out sufficient to go to the jury."

The respondent's brief, however, suggests that "The short form of the question, using the word 'proper' in place of the detailed expression in regard to precautions exercised by other similar businesses in the locality has been used many times without disapproval." For example, in *Thurman* v. *Clune*, 51 Cal.App.2d 505, 507 [125 P.2d 59], involving an action for personal injuries sustained by a spectator at an ice hockey game, the court said: "The practice in other places relative to the safeguarding of ice hockey rinks and the opinion of experts relative to the *proper* safeguards to be taken . . . is evidence which is admissible and is entitled to consideration with other evidence on the query of whether defendant in a particular instance has properly safeguarded the ice hockey rink in question." (Italics added.) In the instant case, as mentioned in respondent's brief, there appears to be no particular dispute as to the duties of floor guards, although there was a certain conflict of testimony as to the number of guards required and the number actually present. Respondent's cause of action, moreover, was not predicated alone upon the number of guards, and the record includes other evidence bearing on the issue of negligence, for example that at the time of the accident, the floor manager was drinking coffee at a soft drink stand, and had only a "limited view" of the skating floor; that the one gaurd who saw respondent lying on the floor made no effort to go to the scene of the accident and that respondent was permitted to remain in such a dangerous position for a space of from three to four minutes without protection.

In view of these facts, appellants' objection, going as it does to the terminology used by the expert witness, cannot be said to have been prejudicial.

■ Appellants' second complaint relates to the sustaining of an objection to appellants' hypothetical question propounded to the witness Albert Baker. The question assumed the dimensions of the skating rink, an attendance of 398 persons and the presence of four guards, and inquired whether or not "in this locality and in the practice of rinks in this locality there was a sufficient and adequate number of guards for that crowd." The trial court sustained an objection thereto, "upon the ground that no foundation has been laid," and declined to permit appellants' attorney to approach the bench for the purpose of arguing the objection.

The record discloses that the witness Baker had had about four years experience as manager of a rollerdrome located at Culver City; that the witness had "only visited one or two rinks since I have been there because I have been busy enough attending to my own business." The trial court evidently felt that this limited experience was not sufficient foundation to entitle the witness to express an opinion as to "the practices of rinks in this locality," and stated: "it is a perfectly obvious proposition, it seems to me it does not require any argument." Moreover, as mentioned in respondent's brief, "no separate offer of proof was made from which it might be inferred that testimony favorable to the appellant would have been produced by the response if one were permitted." Also, "the most that would have been elicited from the witness was that the four guards referred to in the question were a sufficient and adequate number," and four other experts had given similar testimony on behalf of appellants. Under these circumstances it cannot be assumed that the admission of the testimony in question would have affected the verdict of the jury. In this connection respondent's brief calls attention to the fact that "No number of guards employed . . . would affect the findings of negligence if those employed were not performing their duties."

■ Finally, prejudicial error is claimed to have resulted from the giving of an instruction "that appellant did not assume the risk of reckless action of other skaters capable in the exercise of ordinary care, of being prevented by guards who were stationed upon the floor for the protection of the patrons." This instruction was given, as appellants' brief

avers, "after properly instructing the jurors on the doctrine of assumption of risk." The instruction in question is in accord with the language used in *Thomas* v. *Studio Amusements,* 50 Cal.App.2d 538, 543 [123 P.2d 552], where the court said: "One of respondent corporation's defenses was the assumption by appellant of the risks incident to skating upon such a rink; but it cannot be argued that one of the normal risks involved is the reckless action of other skaters capable of being prevented by guards who are stationed upon the rink for the protection of patrons. While the operator of a skating rink is not an insurer of the patrons' safety, nevertheless, he owes a duty to protect them from risks other than those normally incident to the sport." The appellants' attempt to distinguish the Thomas case from the present situation by claiming that, notwithstanding respondent's testimony that "she skated about without noting anything unusual until she was suddenly and unexpectedly struck," nevertheless, because of the fact that other witnesses testified to observing two sailors skating recklessly just before the accident, "it is a fair inference that she (respondent) saw them," is not persuasive. No prejudicial error is apparent.

The judgment is affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied August 2, 1948, and appellants' petition for a hearing by the Supreme Court was denied September 8, 1948.