the action was started in Justice's Court, no greater judgment can be rendered in the City Court than might have been rendered in the action where it was originally commenced. I think the case of Ludwig v. Minot, 4 Daly, 481, is authority for a contrary view. The facts in that case seem to be practically identical with those in the case at bar, viz.: A removal from a court of limited jurisdiction to one having a greater jurisdiction, and the judgment rendered in the latter court in excess of the jurisdiction of the court in which the action was commenced. In this case the court said:

"In the administration of justice, as authorized by its constitutional powers, it has not two courses, one for causes brought into it by due process of removal from inferior courts, and another for those originally commenced therein. The removal of the cause into this court attached to it all the incidents of jurisdiction appertaining to this court."

Incidentally, it is to be observed that in the case last cited the judgment rendered was for $260, but the case was in the Court of Common Pleas of the City and County of New York, a court which may possibly, at least in some respects, have had some jurisdiction superior to that of the Courts of Common Pleas in other counties. However, we find the case of Van Lew v. King, 3 Cow. 375, a Common Pleas case decided in 1824, and *not* in the Common Pleas, New York City and County. In that case the plaintiff claimed $250, but actually recovered only $38.33. That case has some bearing on the one at bar, as showing, apparently, that the Court of Common Pleas had jurisdiction in excess of $200. The motion must be denied.

Motion denied.

---

(95 Misc. Rep. 9)

## In re CUSHMAN.

(Surrogate's Court, Madison County. April, 1916.)

1. ATTORNEY AND CLIENT ⬉⮞26—NEGLIGENCE OF ATTORNEY—EXISTENCE OF NECESSARY RELATION—GUARDIAN.

   The attorney for petitioners in a proceeding for the sale of infants' real estate, though also one of their general guardians, had no such relation of privity or contract with the purchaser at the sale as made him liable for negligence, in consequence of which the title was defective, due to his failure to secure the entry of an absolute divorce decree between his former client, the deceased owner of the property, and his wife.

   [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 38, 39; Dec. Dig. ⬉⮞26.]

2. FRAUD ⬉⮞26—MISREPRESENTATIONS AS TO TITLE—INTENT.

   That the attorney for petitioners for a sale of infants' realty derived from one W. was the attorney for W. in a divorce suit, in which no final decree was entered, and falsely testified and caused others to testify in the sale proceeding that W. was unmarried at the time of his death, and that there was no dower right in the property, did not make him liable to the purchaser, on the ground of fraud, for loss in consequence of the existence of such dower right, where it did not appear that he intended to mislead or defraud the purchaser, or that he profited by the misrepresentations.

   [Ed. Note.—For other cases, see Fraud, Cent. Dig. § 6; Dec. Dig. ⬉⮞26.]

⬉⮞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. PRINCIPAL AND AGENT ☞159(2)—LIABILITY OF AGENT—INJURY TO THIRD PERSON.

A known agent is not ordinarily liable to third persons for omissions or neglect of duty, or for acts done by him pursuant to an authority rightfully conferred, but is liable only for misfeasance, and his own positive or willful torts.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 606–612; Dec. Dig. ☞159(2).]

4. ATTORNEY AND CLIENT ☞26—LIABILITY OF ATTORNEY—INJURED THIRD PERSON.

In the absence of fraud or collusion, the obligation of an attorney to exercise reasonable care and skill in performing a designated service is to the client, not to a third person; but, where there is fraud or collusion, he is liable to third persons, notwithstanding want of any privity of contract.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 38, 39; Dec. Dig. ☞26.]

5. FRAUD ☞50—PRESUMPTION.

The presumptions of law are against the existence of fraud.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47; Dec. Dig. ☞50.]

6. EVIDENCE ☞265(10)—TESTIMONY OF ADMISSIONS BY DECEASED PERSON—PROBATIVE EFFECT.

The testimony of alleged admissions by a deceased person, especially when given by one related to or connected with a person presenting a claim against the deceased person's estate, should be received and considered with great caution.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1038; Dec. Dig. ☞265(10).]

Proceeding upon the judicial settlement of the accounts of Addison J. Cushman, as executor of the will of E. Watts Cushman, deceased. Claim of Leroy Lamb dismissed.

Thomas & Burke, of Hamilton (M. J. White, of Hamilton, of counsel), for claimant.

Albert Smith Sheldon, of Hamilton (Hitchcock & Murphy, of Syracuse, of counsel), for executor.

SENN, S. Leroy Lamb, the claimant, has presented to the executor a claim for $900 for damages sustained by him through the alleged negligence of the deceased. He has also filed a claim for the alleged fraud of the testator growing out of the same transaction. Both claims were rejected by the executor and by consent have been heard by the surrogate.

Testator was an attorney and counselor at law, and was attorney for the petitioners in a certain proceeding for the sale of infants' real estate, being the interest of Rena° C. Stone and David F. Woodman, infants, who were the only heirs at law of said Seth J. Woodman, deceased. The testator was one of the general guardians of said infants; the other being M. Jeanette Woodman, an aunt. The petition in the proceeding was made by the guardians and infants named, and recited, among other things, that the infants were the owners of the property

as heirs at law of Seth J. Woodman, deceased, and that the premises were free from dower interests or rights. The testator was also the attorney for the petitioners in conducting the proceeding. The petition was verified by testator, as well as the other petitioners, and the papers were presumably prepared by the testator. This petition was presented to the Madison County Court, and thereupon an order was duly made appointing Edward B. Stone, the husband of said Rena C. Stone, as special guardian, and James W. Welch, an attorney and counselor at law, was appointed referee to take the evidence in the proceeding. In the testimony before the referee, as appears from the referee's report, E. Watts Cushman, the testator, was sworn as a witness, and among other things testified that at the time of his death Seth J. Woodman was unmarried. M. Jeanette Woodman, the other guardian, was also sworn before the referee and presumably examined by the testator, acting as attorney, and among other things she testified as follows:

"Q. Your brother, Seth J. Woodman, was a single man at the time of his death? A. Yes. Q. And there is no one who has any dower right or life estate or an estate for years in the property? A. No."

Upon the referee's report and the report of the special guardian an order was made directing the sale of the premises for a sum not less than $4,000, and on February 27, 1912, the special guardian made his report that he had made an agreement with Leroy Lamb for the sale of the entire premises and all the right, title, and interest of said infants therein for the sum of $4,100, to be paid by said Leroy E. Lamb, and on or about February 29, 1912, the premises were conveyed in said proceeding from Rena C. Stone and David F. Woodman, by their said special guardian, to Leroy E. Lamb, the claimant, for the sum of $4,100, by deed dated that day and recorded in Madison county clerk's office March 4, 1912, in Liber 234 of Deeds, page 436.

It appears that Seth J. Woodman, through whom the infants derived the title to their real estate, was a married man, and at some time before his decease brought an action, in which the testator was his attorney, against his wife, Cornia Woodman, for a divorce. An interlocutory judgment of divorce was obtained and docketed in Madison county clerk's office on March 18, 1907. Woodman died on or about the 6th day of June, 1907, less than three months after the docketing of the interlocutory decree, and hence no final decree of divorce was ever entered. Subsequently to his purchase of the premises the claimant discovered that no final decree had ever been entered, and that therefore the premises he had purchased were still subject to the dower interest of Cornia Woodman, who was living. He employed attorneys to procure from her a release of her dower, which they were able to negotiate for the sum of $250. Their legal services and disbursements amounted to $149.69. It would seem, under the circumstances, that the widow settled for a reasonable sum.

The evidence in support of the claimant's claim is contained in the several exhibits which have been offered in evidence, including all the papers in the infants' real estate proceeding, the divorce proceeding, and the testimony of Edith Lamb, the wife of the claimant, who testified that she was present with the claimant in the law office of the tes-

tator in the latter part of February, 1912, and overheard a conversation between her husband and the testator. Witness and her husband went there to sign a mortgage, which the claimant was to give to testator for $3,000 and to help him to raise the purchase price, which amount testator was to advance for that purpose, and evidently to receive the deed of the premises. She states that the deed was handed to her husband, but that he handed it back, and that, before giving the mortgage and accepting the deed, the following conversation ensued:

"Mr. Lamb asked Mr. Cushman if Seth Woodman had a divorce from his wife, and Mr. Cushman said. 'Yes, an absolute divorce;' and he then asked him if he would guarantee the title to be good, and he said, 'Yes, he would absolutely guarantee the title to be good.'"

That thereafter the mortgage was signed and delivered and the deed accepted.

[1, 2] The claimant's attorneys have practically abandoned their claim for negligence. They probably have concluded that there was no such privity of contract or employment between the testator and the claimant as to create a liability for negligence and that the testator owed no duty of diligence to the claimant. At any rate, I hold such to be the law. But they seriously insist that, either knowingly or unknowingly, the testator practiced a fraud upon the claimant, and thereby induced him to purchase the premises and pay the purchase price without deduction for the widow's dower. They insist that the testator was not only a party to the proceeding, but the attorney conducting the same, and not only falsely testified that Seth Woodman was unmarried, but caused others to so testify, and that, when finally asked the direct question by the claimant as to the status of Seth J. Woodman with reference to his wife, he positively stated that there was an absolute divorce. This they claim constitutes a fraud upon the claimant, and that his estate is answerable for the consequent damages, whether the testator profited by the transaction or not, and even though he may have believed that what he said was true; that as attorney for Seth J. Woodman he positively knew that no final decree had ever been entered in the divorce matter, and that he must have known that none could be entered, and that the legal effect was to leave the dower rights of Cornia Woodman in full force and effect.

I will say that it is my opinion, based upon the whole evidence, that the testator did not intend to defraud the claimant. It may be that he believed that the effect of the interlocutory decree, followed as it was by the death of Mr. Woodman, no cause having been shown in the meantime why the decree should not be made final, was to extinguish the dower of Mrs. Woodman. I can see how an attorney who had not examined the authorities, reasoning only upon the language of the Code (a relatively recent provision), might have reached such a conclusion. Pettit v. Pettit, 105 App. Div. 312, 93 N. Y. Supp. 1001; Bryon v. Bryon, 134 App. Div. 320, 119 N. Y. Supp. 41; Matter of Crandall, 196 N. Y. 130, 89 N. E. 578, 134 Am. St. Rep. 830, 17 Ann. Cas. 874. Such a mistake in the law would probably constitute negligence, because the authorities were easily obtainable; but it may have been an honest mistake. Possibly his recollection was at fault,

and he may have thought that final judgment had been obtained. This would not be strange after a lapse of five years after the interlocutory decree was obtained. In a case of negligence he would probably be liable for such a mistake, for diligence would require him to examine the records and ascertain what was finally done in the divorce action.

But as the claim concededly cannot be sustained on the theory of negligence, the question arises whether the facts as presented constitute a case of actionable fraud—whether he misrepresented as to the material fact of Mr. Woodman having a divorce from his wife, when he knew or is chargeable with knowing that such was not the case. It does not affirmatively appear that Mr. Lamb relied on the representations, but I think it may fairly be inferred that he did.

[3] As a general rule a known agent is not responsible to third persons for acts done by him in pursuance of an authority rightfully conferred. The agent is not liable to third persons for omission or neglect of duty; the principal alone is responsible. Colvin v. Holbrook, 2 N. Y. 126. Though not liable for nonfeasance, he is liable for misfeasance (so held in a case of deliberate misfeasance and where the agent profited thereby). Crane v. Onderdonk, 67 Barb. 47. For his own positive or willful torts the agent is liable to third persons. Gutchess v. Whiting, 46 Barb. 139. A county clerk, in making a search, is only liable to the person for whom it is made; that is, the one who procures and pays for it. Day v. Reynolds, 23 Hun, 131. See, also, Glawatz v. People's Guaranty Search Co., 49 App. Div. 467, 63 N. Y. Supp. 691.

[4] An attorney is only liable to his client when employed to examine titles to real estate. Where there is neither fraud, falsehood, nor collusion, the obligation of the attorney to exercise reasonable care and skill in the performance of the designated service is to the client, and not to a third party. Where no such wrongful element exists, he is not liable for the want of reasonable care and skill at the suit of any one between whom and himself the relation of attorney and client does not in some manner exist. Where there is fraud or collusion, the party will be held liable, even though there is no privity of contract. National Savings Bank v. Ward, 100 U. S. 195, 25 L. Ed. 621. In a large number of cases the courts have emphasized that a party is not liable for fraud, unless the false representations were made knowingly or with intent to deceive.

The element usually necessary to maintain an action for fraudulent representations is that the representation was known by the party making it to be false and was made with intent to deceive. So held in a case where the defendant, in order to procure credit, had materially understated the amount of his indebtedness to another party. Stitt v. Little, 63 N. Y. 427. Where the defendant sold a steam engine and boiler, which he represented to be in good working order, and when taken down it was ascertained that it was not, the court held that, in the absence of evidence showing that the defendant knew of the defects, an action for fraud could not be maintained. Lamb v. Kelsey, 54 N. Y. 645.

The essential elements of an action for false pretenses are falsity,

scienter, deception, and injury. In a case where the defendant sold stock of "the National Lead Trust," representing that he had a right to do so, when in fact the trust was an illegal combination and he had no right to sell its stock, the court held that no action could be maintained against the defendant for fraud, unless he had knowledge of the falsity of his statements. Unckles v. Hentz, 19 App. Div. 166, 45 N. Y. Supp. 894, citing Hotchkin v. Third National Bank, 127 N. Y. 337, 27 N. E. 1050; Meyer v. Amidon, 45 N. Y. 170; Brackett v. Griswold, 112 N. Y. 467, 20 N. E. 376; Arthur v. Griswold, 55 N. Y. 400. Marsh v. Falker, 40 N. Y. 562, was a case where the defendant made to the plaintiff false representations concerning the responsibility of one Isaac Kahn, thereby inducing plaintiff to extend credit to said Kahn. It was held that the plaintiff could not recover. In a long opinion Judge Daniels, among other things. said:

"In order to determine whether representations of actual knowledge of the existence of material facts be deceitfully or fraudulently made, or whether that may be properly and fairly inferred, regard must be had to the transaction in which they are made, and to the subject to which they relate; for, as to many subjects of trade and traffic, the acquisition of such knowledge is common, and therefore, when imported by the representations made, it may be reasonably expected to have been intended that the person to whom they may be made should understand that to be their character. As to many other things, the possession of actual knowledge is exceedingly rare and exceptional, and when representations are made concerning them, they are usually understood as amounting to no more than the candid and sincere convictions of the person making them. They are expressions of opinion or judgment, rather than absolute representations of fact, and as such are not necessarily fraudulent, though they afterwards turn out to be wholly unfounded and untrue. If they are made in good faith, the person making them cannot justly or legally be held liable for the consequences resulting from them to the person who may afterwards act upon them. Upon this subject Chancellor Kent stated the law to be that 'misrepresentation without a design is not sufficient for an action; but if recommendation of a purchaser as of good credit to the seller be made in bad faith, and with knowledge that he was not of good credit and the seller sustains damage thereby, the person who made the representation is bound to indemnify the seller.' 2 Kent, 490. This rule places the liability of the defendant upon the true ground, exonerating him where he may act in good faith and still err in his judgment, and rendering him responsible where he knowingly misinforms the applicant for the purpose of deceiving him."

The defendant's counsel calls my attention to some cases which seem to hold a contrary doctrine. Bennett v. Judson, 21 N. Y. 241, was a case where the defendant, for the purpose of effecting a sale to the plaintiff of certain lands in the West, made false and fraudulent representations in respect to their location, proximity to a river and railroad, agricultural qualities, etc., and on the trial claimed that he made the representations upon statements made to him by his brother, who had formerly owned the lands, who in his turn derived his information from persons residing in the states where the lands were located, and whom he had employed as agents for the payment of his taxes. The statement was made in general terms, without referring to any other person as authority for its truth. The defendant had never been in the vicinity of the land. In that case the court held, in substance, that where the defendant made false statements, and had no knowledge as to their truth or falsity, he was liable for fraud.

That was a pretty plain case of the defendant knowing that he did not have knowledge of the truth or falsity of his statements. In Wakeman v. Dalley, 51 N. Y. 33, 10 Am. Rep. 551, Judge Earl in his opinion says that the statement of the rule as made in Bennett v. Judson is not accurate, without a number of important qualifications, "and upon the facts, as they are reported in that case, I entertain serious doubt whether the case was properly decided." Hadcock v. Osmer, 153 N. Y. 604, 47 N. E. 923, is a strong case in favor of the claimant's contention. There the court stated that:

"Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not, and it is actually untrue, he is guilty of falsehood, even if he believes it to be true; and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it to his injury, the result is actionable fraud."

This was a case where the defendant gave to the plaintiff the following paper to induce the plaintiff to loan to Delos Brown and Joseph Brown, who were indebted to the defendant, the sum of $400, viz.:

"Mr. Hadcock: The Browns are good for what money you let them have. [Signed] L. Osmer."

Relying upon this information, the plaintiff let the Browns have this money, with which they paid their debt to the defendant, and which the defendant had theretofore been unable to collect. I do not think that that case bears much resemblance to the one at bar. In support of this strong dictum the court cites Marsh v. Falker and Bennett v. Judson, above referred to, and also Kountze v. Kennedy, 147 N. Y. 124, 130, 41 N. E. 414 (29 L. R. A. 360, 49 Am. St. Rep. 651). But in the latter case Judge Andrews in his opinion, among other things, says:

"The representation upon which it is based must be shown not only to have been false and material, but that the defendant when he made it knew that it was false, or, not knowing whether it was true or false and not caring what the fact might be, made it recklessly, paying no heed to the injury which might ensue. Misjudgment, however gross, or want of caution, however marked, is not fraud. Intentional fraud, as distinguished from a mere breach of duty or the omission to use due care, is an essential factor in an action for deceit. The man who intentionally deceives another to his injury should be legally responsible for the consequences. But if, through inattention, want of judgment, reliance upon information which a wiser man might not credit, misconception of the facts or of his moral obligation to inquire, he makes a representation designed to influence the conduct of another, and upon which the other acts to his prejudice, yet, if the misrepresentation was honestly made, believing it to be true, whatever other liability he may incur he cannot be made liable in an action for deceit."

[5] The claimant's attorneys cite cases to show that it is immaterial whether the testator profited by the fraud or not. That is true in case of actual, deliberate fraud. The fact that the testator had no motive in perpetrating a fraud is one of the reasons why I am of the belief that no fraud was intended by him. Besides, the presumptions of law are against fraud. "Where a negative allegation involves a charge

of criminal neglect of duty, whether official or otherwise, or fraud, * * * the party making the allegation must prove it; for in those cases the presumption of law which is always in favor of innocence is in favor of the party charged." 1 Greenl. Ev. § 80. This doctrine is held in so many cases that it may be accepted as settled law and is in fact elementary.

I think it is clear from the authorities that where untrue representations are made in good faith and in the belief that they are true, and the one making them does not profit by the transaction, he is not liable. Where one makes representations which are deliberately untrue, then it is immaterial that he did not profit thereby; if he profited thereby he may be liable, even though he believed his statements to be true. I think that in this way the apparent conflict in the decisions can be explained. Of course, much depends on the special circumstances, as every case must, to a certain extent, be decided on its own facts and circumstances.

[6] The testimony of Mrs. Lamb falls within the condemnation of a long line of cases which have held that testimony of alleged admissions by a deceased person, especially when given by one who is related to or connected with the claimant, is to be received with caution, great care, strict scrutiny, and even suspicion. Notwithstanding, I am satisfied that Mrs. Lamb, to the best of her ability, told the truth, and narrated the conversation between her husband and the testator substantially as it occurred, and as correctly as she could remember.

Accepting the material portions of her testimony as entirely true, not being satisfied or believing that the testator intended to mislead or defraud, the testator not having profited by the misrepresentations, and not being legally liable to claimant for his negligence, I feel that I must hold, I admit with some regret, that this claim cannot be legally sustained. For that reason the claim is dismissed, without costs against the claimant.

Decreed accordingly.