[Civ. No. 18255.   Second Dist., Div. Three.   Apr. 20, 1951.]

JAMES H. MULLIGAN et al., Appellants, v. PHILLIP L. WILSON et al., Respondents.

Charles L. Nichols and George Acret for Appellants.

Wood, Crump, Rogers & Arndt and Stanley M. Arndt for Respondents.

SHINN, P. J.—Plaintiffs appeal from a judgment in favor of Phillip L. Wilson and wife, herein called defendants, after the sustaining of a demurrer to the second amended complaint without leave to amend. Other persons were named defendants but were not served. Plaintiffs denominated their action as one for declaratory relief to quiet title, to impress a trust, and for damages. Their claims arise out of an agreement with defendants concerning two city lots in Los Angeles.

On February 20, 1946, plaintiffs paid $500 for an option to purchase the lots from Mary C. Durant for $50,000, payable $10,000 down and $40,000 within five years at 5 per cent interest. Plaintiffs sold the option to defendants for $500 and in further consideration of an agreement which recited that the Wilsons had deposited in escrow $9,500 in cash and had executed a trust deed in the amount of $40,000 securing five promissory notes each in the amount of $8,000 with interest at 5 per cent per annum "said cash and deed of trust being in full payment of the purchase price of the real property hereinbefore described." Plaintiffs were to receive on a sale of the property one-half of the profits. The option agreement and the agreement between plaintiffs and defendants are set out in the opinion of the court rendered upon a former appeal by plaintiffs from a judgment declaring the rights of the parties under the same agreement (*Mulligan v. Wilson*, 94 Cal.App.2d 286 [210 P.2d 526].) Upon completion of the escrow $9,500 was paid to the seller and defendants' five notes for $8,000 each payable in one, two, three, four and five years after August 20, 1946, also were delivered to the seller. The note which fell due August 20, 1947, was paid by defendants. The principal and interest which fell due August 20, 1948, were not paid. Shortly before the due date defendants demanded of plaintiffs that they pay one-half of the note, which plaintiffs refused to do, claiming that it was the duty of defendants to pay the notes and interest as they fell due. On August 18, 1948, plaintiffs brought an action in which they sought a judgment declaring that it was the duty of defendants to pay the notes and to act in good faith in carrying out the agreement. The judgment rendered in that case declared the rights of the parties and was affirmed on the former appeal. It declared that defendants owned the property and that plaintiffs had no rights therein except those created by the agreement; defendants had a right to sell the property for $85,000, or more, or could purchase the same through an agent or dummy for $85,000,

or more, and could purchase the rights of plaintiffs on the basis of $85,000 for the entire property, provided no available purchaser known to the defendants would pay more for the property; defendants had invested $20,815.08 which should be returned to them plus 7 per cent interest before a division of profits; that there had been no bad faith on the part of the defendants and "there is an obligation on all of the parties to said agreement to use good faith in carrying out said agreement." That judgment was affirmed August 26, 1949. The note, which fell due August 20, 1949, was not paid. January 17, 1950, the property was sold under the trust deed to defendants for $65,000 and they received from the trustee the difference between that sum and the amount of their debt, plus expenses of selling.

Defendants by their agreement with plaintiffs did not obligate themselves to pay the notes or the expenses of carrying the property for five years or for any other time. Nevertheless, plaintiffs allege "that by the agreement aforesaid it was the mutual intent of the parties that in consideration of plaintiffs transferring said option to the defendants Wilson that the defendants Wilson would pay the principal of each of said trust deed notes, together with all interest thereon, together with all necessary expenses in the carrying of said property extending if necessary through said period of 5 years." It is apparent that if plaintiffs were to succeed in imposing upon defendants the duty to pay the notes as they fell due it would have to be through reformation of the agreement or by means of evidence other than that furnished by the agreement itself. If they had or claimed such additional rights they had an opportunity and a duty to assert them in the former action, but they stood on the agreement alone, and as a consequence the court declared that they had the rights granted by the agreement, and none other. This declaration means also that defendants were under no duty toward plaintiffs other than those expressed in the writing. Plaintiffs are bound by this adjudication. They have not invoked any principle of law or equity under which defendants would be obligated to carry the expenses of holding the property and paying the sums necessary to protect it from foreclosure. This was strictly a matter of contract. ■ It is scarcely necessary to say that the judgment which declares the rights of plaintiffs bars them from claiming any greater rights which could have been asserted by them in the former action. (*Andrews* v. *Reidy*, 7 Cal.2d 366 [60 P.2d 832].)

It would have been possible, of course, for defendants by reason of their subsequent conduct to preclude themselves from claiming for themselves the entire title which they acquired through foreclosure. Plaintiffs have sought to allege facts which would call for a declaration that defendants hold the property to the extent of plaintiffs' interest under a constructive trust. Their complaint is replete with charges of fraud, bad faith and conspiracy to acquire the property with the specific intent of depriving plaintiffs of all interest therein. These general characterizations of defendants' conduct and motives do not have any potency beyond that to be derived from the facts alleged. The factual allegations may be summarized as follows: Defendants stood in a relation of trust and confidence toward plaintiffs; plaintiffs had no money with which to pay any part of the trust deed indebtedness, which fact was known to the defendants; it was the purpose of defendants in allowing the payments to become delinquent to bring about a foreclosure, and to bid in the property for themselves at the lowest possible price; they represented to plaintiffs that they intended to act fairly and in good faith toward plaintiffs; due to improvements in the neighborhood and the opening of a through highway adjacent to the property the value of the property was increased to the sum of $185,000; defendants failed and refused to grade the lots to the street level as they had agreed to do and thereby prevented enhancement of value which the grading would have accomplished, and made it necessary for the state to acquire a right to terrace the property down to the street level; they refused to pay more than $65,000 when another bidder had bid $64,500; at the time of the sale the trustee did not call attention of the bidders to the improvements in the vicinity which had increased the value of the property. When these allegations are put together and examined it becomes apparent that plaintiffs are assuming that the relation of the parties was such as to preclude defendants from acquiring the property for themselves. Plaintiffs do not point out wherein defendants had any contractual duty to protect plaintiffs' interest in the profits. Surely the fact that plaintiffs were financially unable to protect themselves did not make it the duty of defendants to protect them. Plaintiffs knew of the delinquencies, knew that defendants were not going to cure them, knew the property was to be sold and had an equal opportunity to find a purchaser. Defendants did nothing

to interfere with any efforts plaintiffs might have wished to put forth and made no promises to plaintiffs of whatsoever nature. They did not prevent the attendance at the sale of bidders nor discourage bidding. The allegations as to their alleged acts which it is claimed depressed the market value of the property are discounted by the allegation that the property was worth $185,000. Plaintiffs do not allege that they were deceived in any manner. If all the facts alleged by plaintiffs had been proved they would have been insufficient to support a finding of fraud. The allegation that plaintiffs reposed great confidence and trust in defendants until October 31, 1949, when they discovered defendants' intention to allow the land to be sold under foreclosure, does not strengthen the complaint. Admittedly plaintiffs had known for more than a year that defendants expected them to pay one-half of the notes and they learned long before the sale that defendants intended to bid in the property for themselves. Such are their allegations. Defendants did not acquire the property through any breach of trust. The fact that one business associate takes a selfish advantage of another does not make a lawsuit, if it is taken legally. There is no basis in the facts alleged for the contention that defendants are accountable to plaintiffs for an interest in the property, or profits, as constructive trustees.

Plaintiffs having failed to allege facts to establish either a legal or equitable interest in the property or a right to damages were not entitled to a declaratory judgment in their favor. Their demurrer to the second amended complaint was properly sustained. ■ Plaintiffs at the time of the submission of the demurrer stated that they would not amend if the demurrer were sustained. It was proper to sustain it without leave to amend.

The judgment is affirmed.

Wood (Parker), J., concurred.

Vallée, J., did not participate.

Appellants' petition for a hearing by the Supreme Court was denied June 18, 1951.