[Civ. No. 20859. Second Dist., Div. One. Dec. 6, 1955.]

ALLAN D. GREENWOOD, Appellant, v. LEON MOORA-DIAN et al., Defendants; R. BRUCE MURCHISON, Respondent.

[Civ. No. 20972. Second Dist., Div. One. Dec. 6, 1955.]

ALLAN D. GREENWOOD, Appellant, v. LEON MOORA-DIAN et al., Defendants; L. D. ORMSBY et al., Respondents.

Vaughan & Brandlin and Robert P. Schifferman for Appellant.

Bicknell J. Showers, W. I. Gilbert, Jr., Jean Wunderlich, D. Brandon Bernstein and Murchison & Cumming for Respondents.

ASHBURN, J. pro tem.*—Plaintiff Allan D. Greenwood prosecutes two appeals from judgments in a single action. One of them (No. 20859) is taken from a judgment of nonsuit in favor of defendant R. Bruce Murchison, entered upon plaintiff's opening statement with respect to the fourth amended complaint. The other (No. 20972) challenges two judgments made upon sustaining demurrers to sixth amended complaint without leave to amend.[1]

### APPEAL FROM JUDGMENT OF NONSUIT

The fourth amended complaint, upon which the case originally went to trial and which was before the court at the time of granting the Murchison nonsuit, alleged that plaintiff Greenwood, defendants Leon Mooradian, L. D. Reeder, Frank Mile, Leonard D. Ormsby, L. M. Fabricating Company and others, entered into a joint venture agreement on October 29, 1951, which was partly written and partly oral, the object being to produce for Lockheed Aircraft Corporation a certain product under purchase orders and a basic agreement made with that corporation. Defendant Murchison is not alleged to have been a member of the venture. The written agreement was made "between L. M. FABRICATING Co. & ASSOCIATES, First Party, and REEDER INTERNATIONAL & ASSOCIATES, Second Party, as joint venturers and a joint venture to be known from date hereof as L. M. ENGINEERING COMPANY & ASSOCIATES." It was signed on behalf of L. M.

---

*Assigned by Chairman of Judicial Council.

[1]One of those judgments runs in favor of L. M. Engineering Company and Associates, Inc., Leon Mooradian, L. M. Fabricating Company, L. M. Engineering Company, L. M. Industries, Inc., L. M. Fabricating Co. and Associates, L. M. Engineering Company and Associates, and E. R. Waltrous. The other judgment is in favor of L. D. Ormsby, L. D. Reeder, Reeder International, L. D. Reeder Lumber Company, L. D. Reeder Company of Los Angeles, Teclite Supply, Incorporated, and Reeder International and Associates.

Fabricating Company and Associates by Leon Mooradian, as "A managing Director"; and by L. D. Reeder as "A managing Director" of Reeder International and Associates. But it is alleged that there was an oral understanding between the plaintiff and the defendants who were parties to the joint venture, that the written agreement was to be executed by defendant Reeder in the name of Reeder International and Associates on behalf of plaintiff, defendants Reeder, Ormsby and Mile, and that in fact the writing was so executed; that it was further orally understood between said parties that a 50 per cent interest in the joint venture, which under the written agreement was nominally vested in Reeder International and Associates, belonged to the last named persons in the following proportions: L. D. Ormsby, 22 per cent, Allan D. Greenwood, 13 per cent, L. D. Reeder, 13 per cent and Frank Mile, 2 per cent. It was also alleged that defendant Mooradian executed the written agreement in the name of L. M. Fabricating Company and Associates on behalf of himself, defendant L. M. Fabricating Company and other fictitiously named defendants; that the 50 per cent interest in the joint venture nominally vested in said L. M. Fabricating Company and Associates actually belonged to said Mooradian, L. M. Fabricating Company and certain fictitiously named defendants in proportions unknown to plaintiff. The complaint also avers that it was likewise orally and contemporaneously agreed that the new joint venture, L. M. Engineering Company and Associates, would employ plaintiff and Mooradian for the duration of the joint venture and would pay to each of them a salary of $2,000 per month, beginning September 15, 1951, and continuing until the termination of the venture, which salaries would be in addition to the respective joint venture shares of plaintiff and Mooradian, but that the salary checks would not be cashed until a certain guarantee, executed by defendant Ormsby to the bank to secure a loan made by the joint venture, should be discharged in full. A conspiracy is alleged, and that allegation includes the defendant Murchison, a respected member of the bar, whose protestations of falsity of the charge cannot be here considered, for this court is confronted with a question of law only and must accept the allegations of the complaint as true for the purposes of this appeal.

The averment is that "the defendants herein have conspired together to appropriate to themselves and convert to their own use and benefit the assets and profits of the

aforesaid joint venture, including the interest of the plaintiff therein, and have appropriated and converted the said assets and profits of the said joint venture in an amount unknown to the plaintiff, including the interest of the plaintiff therein;'' that defendants caused defendant L. M. Engineering Company and Associates, Inc., to be organized, the incorporators being Reeder, Mooradian and Murchison; ''that said defendants are in complete control of said defendant corporation and have formed same for the purpose of holding the assets and profits of the joint venture and defrauding plaintiff of his interest in said joint venture and to its assets;'' that the defendants, other than L. M. Engineering Company and Associates, caused the Lockheed purchase orders and basic agreement to be cancelled, obtained new purchase orders and a new basic agreement in the name of L. M. Engineering Company and Associates, Inc., and appropriated and converted to their own use all of the assets of the joint venture, having an approximate value of $200,000; that this was done on or about March 25, 1952; that defendants are now operating under the new purchase orders and basic agreement and appropriating to themselves the profits of the venture; that they have deprived and are depriving plaintiff of his interest in its assets and profits; that the new corporation is under the control of defendants, including the defendant Murchison. Plaintiff prays for a receiver, an injunction, and an accounting of the affairs of the joint venture and the respective interests and rights of plaintiff and defendants in the assets thereof; that defendants be required to pay plaintiff his accrued salary in the sum of $13,000; that the court declare the respective rights and duties of the parties in the joint venture and in the successor enterprise which has been set up by defendants, and that plaintiff have general relief. Defendant Murchison is not a party to the first cause of action and hence the discussion herein relates to the second count.

Plaintiff's attorney made an opening statement which was supplemented until he declared it to be complete.

The rules pertaining to a motion for nonsuit based upon an opening statement are set forth in *Bias* v. *Reed,* 169 Cal. 33, 37 [145 P. 516]: ''It is no doubt true, as is argued by the appellants, that the practice of directing a verdict, in advance of the introduction of evidence, upon the opening statement of one or the other party is a dangerous one

and that an order granting such motion can be upheld only where it is clear that counsel has undertaken to state all of the facts which he expects to prove, and it is plainly evident that the facts thus to be proved will not constitute a cause of action or a defense, as the case may be. . . . Where, however, these conditions are complied · with, the court is authorized to accept the statements and admissions of counsel and to direct a verdict required by such statements or admissions. . . . [P. 38.] In reviewing an order directing a verdict on an opening statement the appellate court must apply rules analogous to those which govern it in reviewing an order granting a nonsuit after the introduction of evidence. Every fact which counsel has stated as among the matters to be proved, together with all favorable inferences reasonably to be drawn therefrom, must be accepted by the court as facts which would have been proved if the case had been allowed to be tried." See also *Moffitt* v. *Ford Motor Co.*, 117 Cal.App. 247, 251 [3 P.2d 605]; Witkin California Procedure, volume 2, section 128, page 1860.

The opening statement developed into a lengthy argument in which the judge participated and counsel for plaintiff was put to the burden of justifying his pleading and enumerating wrongful acts done by defendant Murchison in furtherance of the alleged conspiracy.

The attack upon the complaint was centered upon the generality of the averment of conspiracy. It is above quoted and is sufficient to satisfy the controlling authorities. ▪ The argument is that acts constituting the conspiracy, as well as those inflicting a wrong pursuant thereto, must be alleged. The cases are to the contrary. In *California Auto Court Assn.* v. *Cohn*, 98 Cal.App.2d 145 [219 P.2d 511], the allegation of fact of the conspiracy itself was no more detailed than the one at bar. At page 149 this division of this court rejected the claim of insufficiency of the allegation, saying: "As to the necessity of interference by unlawful action respondents contend the complaint contains a bare allegation of conspiracy and is therefore insufficient. The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design. The cause of action is the damage suffered. . . . The complaint contained allegations of acts of the respondents in detail and was not confined to a 'bare' allegation of conspiracy." The last quoted language referred to acts alleged

to have been done pursuant to the conspiracy and in effectuating an actionable wrong.

In *Abbott Kinney Co.* v. *Harrah,* 84 Cal.App.2d 728, 733 [191 P.2d 761], this court also held sufficient a similar allegation of conspiracy. Like rulings were made in *Moropoulos* v. *C. H. & O. B. Fuller Co.,* 186 Cal. 679, 682, 688 [200 P. 601]; *Mox Inc.* v. *Woods,* 202 Cal. 675, 677 [262 P. 302]. See also Witkin, California Procedure, volume 2, section 469, pages 1457-1458.

The view that defendant Murchison must be shown to have done some overt and independently tortious act in order to be liable as a conspirator is a mistaken one. In the *California Auto Court Assn.* v. *Cohn* case, *supra,* 98 Cal. App.2d 145, at page 149, the court also said: "Each participant in the wrongful act is responsible as a joint tort feasor for all damages ensuing from the wrong, regardless of whether or not he was a direct actor and of the degree of his activity. (*Mox Inc.* v. *Woods,* 202 Cal. 675 [262 P. 302].) Furthermore, because of the inherent difficulty in proving a conspiracy, it has been held that a conspiracy may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances. (*Anderson* v. *Thacher,* 76 Cal.App.2d 50, 72 [172 P.2d 533].)" *Mox Inc.* v. *Woods, supra,* at pages 677-678: "In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tort feasor for all damages ensuing from the wrong irrespective of whether or not he was a direct actor and regardless of the degree of his activity. [Citing cases.] A plaintiff is entitled to a joint recovery of damages against such defendants as he can show have united or cooperated in inflicting a wrong upon him. [Citing cases.] The advantage gained in charging a conspiracy is that the act of one during the conspiracy is the act of all if done in furtherance thereof, and thus defendants may be held liable who in fact committed no overt act whatsoever and gained no benefit therefrom."

The opening statement revealed that "defendant Mr. Murchison was the attorney for the defendant Ormsby during a substantial period of the time and is now representing some additional parties." It also covered the fact of conspiracy both by direct charge and citation of acts alleged to have been done by defendant Murchison which would tend sub-

stantially to prove indirectly the alleged concert of action. Counsel also detailed a large number of overt acts in furtherance of the conspiracy which he claimed to have been done by Murchison. In short, his statement covered the allegations of the complaint as above summarized. And counsel's statement, viewed impersonally and objectively, disclosed facts which if proved would be sufficient to establish a conspiracy and Murchison's participation in and furtherance of the same.

The theory of the action was initially stated by counsel as follows: ''The action that the plaintiff brings is for an accounting for profits and declaration of a constructive trust, and the action is against the fellow joint venturers and various individuals and corporations that have acquired assets of the joint venture. . . . And in addition to that, the plaintiff seeks 13 per cent of the profits of the venture. In other words, the $2,000.00 per month was not to be against the 13 per cent. It was $2,000.00 per month plus 13 per cent. The right to the $2,000.00 per month is based upon agreements made contemporaneously with the joint venture, and the agreement was that the plaintiff would receive this $2,000.00 per month for the term of the joint venture operation.'' Assuming the truth of his allegations and oral statement, plaintiff has a good cause of action against all defendants who participated in diverting and presently possessing the assets and business of the joint venture of which he was a member. This in effect is the holding in *San Francisco Iron etc. Co.* v. *American Milling etc. Co.*, 115 Cal.App. 238, 248, 249 [1 P.2d 1008]; *Menefee* v. *Oxnam*, 42 Cal.App. 81, 85, 86 [183 P. 379]; *Elsbach* v. *Mulligan*, 58 Cal.App.2d 354, 366, 369 [136 P.2d 651]; *Sime* v. *Malouf*, 95 Cal.App.2d 82, 94, 97, 98 [212 P.2d 946, 213 P.2d 788]; *MacIsaac* v. *Pozzo*, 26 Cal.2d 809, 815 [161 P.2d 449]; *Laughlin* v. *Haberfelde*, 72 Cal.App.2d 780, 787-790 [165 P.2d 544]; and *Lomita Land & Water Co.* v. *Robinson*, 154 Cal. 36 [97 P. 10, 18 L.R.A.N.S. 1106]. The record does not substantiate respondents' claim that the charge of conspiracy has been abandoned by appellant.

Defendant Murchison's status as attorney for one of the other defendants does not immunize him from liability for torts committed in person or liability for wrongs done pursuant to conspiracy joined by him. (*Warner* v. *Roadshow Attractions Co.*, 56 Cal.App.2d 1, 7 [132 P.2d 35]; *Hoosac Tunnel Dock & Elevator Co.* v. *O'Brien*, 137 Mass. 424, 427

[50 Am.Rep. 323] ; *First Nat. Bank* v. *Broder,* 107 Conn. 574 [141 A. 861, 864] ; *Haggerty* v. *Moyerman,* 321 Pa. 555 [184 A. 654, 655] ; *Thomas Fruit Co.* v. *Levergood,* 135 Okla. 105 [274 P. 471, 472] ; *In re Cushman,* 95 Misc. 9 [160 N.Y.S. 661, 665] ; 7 C.J.S. § 52b, p. 834.)

The granting of the nonsuit was erroneous. When that ruling was made plaintiff's attorney under the compulsion of adverse rulings applied for leave to amend the complaint with respect to defendant Murchison. The motion was denied and that ruling is now urged as error. It is unnecessary to discuss that claim for the complaint was not fatally defective and the order granting the nonsuit was prejudicially erroneous.

APPEAL FROM JUDGMENT AFTER SUSTAINING DEMURRER
TO SIXTH AMENDED COMPLAINT

There were two demurrers to the sixth amended complaint and two separate judgments entered thereon. One demurrer was interposed on behalf of the Mooradian group of defendants and the other was that of the Reeder group. Both having been sustained without leave, judgments were entered accordingly. (See footnote 1, *supra.*) Plaintiff appeals from each judgment.

The sixth amended complaint alleges the same basic cause of action as the fourth amended complaint. Of course, Mr. Murchison is not a party to it. The making of the written and oral joint venture agreement of October 29, 1951, is alleged; also that one of the signatories, L. M. Fabricating Company and Associates, "is a fictitious firm name under which Mooradian conducted certain of his business"; that Reeder International and Associates, the other signatory, "is a fictitious firm name used for convenience only by plaintiff and defendants Reeder, Ormsby and Mile to execute the joint venture agreement" of October 29, 1951; also that L. M. Engineering Company and Associates "is a joint venture composed of the plaintiff and the defendants Reeder, Ormsby, Mooradian and Mile"; that "it was orally agreed at the time of the execution of said Exhibit 'A'[2] by plaintiff and the defendants Reeder and Mooradian that execution of exhibit 'A' in the name of L. M. Fabricating Co. & Associates and Reeder International & Associates was for convenience only; that the rights and obligations of L. M. Fabricating Co. & Associates under said Exhibit 'A'

---

[2]The written agreement of October 29, 1951.

were in fact the rights and obligations of Mooradian; that the rights and obligations of Reeder International & Associates under said Exhibit 'A' were in fact the rights and obligations of the plaintiff and Reeder equally; that the 50% participating interest in the joint venture standing nominally in the name of L. M. Fabricating Co. & Associates was and would be deemed the property of the defendant Mooradian, and that the 50% participating interest in the joint venture standing nominally in the name of Reeder International & Associates was and would be deemed the property of the defendant Reeder and plaintiff, 25% each''; that a supplemental agreement of October 30, 1951 (exhibit B of the complaint), was also executed in the same manner as a matter of convenience only. Defendant Ormsby is alleged to have agreed to assist in financing the joint venture by making a guaranty of a loan from the Security-First National Bank of Los Angeles to the venture; that he was then included as a party in interest, respective shares being readjusted; that for other reasons there were further readjustments to which plaintiff and defendants Reeder, Ormsby, Mooradian and Mile agreed, which resulted in the following participations: Mooradian 50 per cent, Reeder 13 per cent, Ormsby 22 per cent, Mile 2 per cent and Greenwood 13 per cent. It was also agreed between said parties, so plaintiff avers, that defendant Mooradian would receive a salary for his services of $2,000 a month during the term of the joint venture, and that plaintiff should receive from the profits of the joint venture the sum of $2,000 a month from September 15, 1951, during the entire term of the joint venture, which sum was to be paid in consideration of services rendered by him, it being further agreed that the $2,000 monthly payments could not be terminated without plaintiff's approval and that that monthly sum ''was actually in the nature of an interest in the joint venture and to be paid before the remaining profits were distributed among the joint venturers in the percentages herein set forth.'' It was also agreed in connection with the monthly payments to plaintiff and Mooradian that the said sums were not to be actually disbursed to them until the guaranty executed by Ormsby was fully discharged or until he consented to such disbursement. The said bank loan was paid in March, 1952, and thereupon Mooradian cashed the checks previously delivered to him representing the monthly compensation; but on March 29, 1952, defendants Reeder, Ormsby and Mooradian

stopped payment on the checks previously given to plaintiff, and thereafter refused to pay or cause the joint venture to pay the said $2,000 a month to which he alleges he was entitled. On March 29, 1952, the said defendants wrongfully excluded plaintiff from the place of business and management of the joint venture, have continued to exclude him, have denied him access to the books and refused to account for the properties which he alleges to have been converted by them. In this connection plaintiff says that Ormsby, Reeder and Mooradian secretly transferred the joint venture business and its assets to L. M. Engineering Company and Associates, Inc., on March 24, 1951;[3] that they had caused said company to be incorporated and all of its stock issued to themselves. About March 24, 1952, they caused the Lockheed agreement to be cancelled and a new one issued to the said L. M. Engineering Company and Associates, Inc., which operated the business from March, 1952, until the latter part of that year when Reeder, Ormsby and Mooradian secretly caused L. M. Industries, Inc. to be incorporated, and then transferred the business and assets to it. Plaintiff alleges that he has had no compensation, profits or accounting. The first cause of action also contains allegations of the receipt of various sums by individual defendants (some of whom were brought in after the ruling upon the fourth amended complaint), which receipts are alleged to have constituted unjust enrichment.

A second count is an abbreviated charge of wrongful exclusion of plaintiff from participation in the joint venture of which he was a member, and nonpayment of moneys due him. The third to eighth counts charged different defendants separately with the receipt of specific moneys or assets of the joint venture, alleged to have constituted unjust enrichment.

The prayer is for dissolution of the joint venture created by the contract of October 29, 1951, a complete accounting of all its affairs, that defendants L. M. Engineering Company and Associates, Inc., and L. M. Industries, Inc. be required to account as constructive trustees, and for various other types of relief.

■ That the diversion to his own individual use of the entire assets of a joint venture by one member gives rise to a cause of action in favor of the nonparticipating member who has been injured thereby, and a right to such legal or

---

[3]Appears to be a misprision, intended for 1952.

equitable relief as may be appropriate, is a well established doctrine in this state. (*San Francisco Iron etc. Co.* v. *American Milling etc. Co., supra,* 115 Cal.App. 238, 248, 249, and other cases cited *supra.*)

It is argued that plaintiff has no cause of action because his interest in the joint venture created by the agreement of October 29, 1951, is not deducible from the face of the writing, is provable only by oral evidence and that that violates the parol evidence rule. It is to be noted that the agreement does not declare the status of either of the named parties except through use of the phrase "as joint venturers." Mooradian is described as "A managing Director" (the word "President" having been stricken), and he signs the instrument in the name of "L. M. Fabricating Co. & Associates, by Leon Mooradian, A managing Director." Reeder is not described in the instrument but he signs "Reeder International & Associates, by L. D. Reeder, A managing Director." The agreement itself furnishes no clue to the nature of either organization, whether corporation, partnership, joint venture or mere fictitious name. ▇ It is not a violation of the parol evidence rule to prove by extrinsic evidence the identity of the parties in interest when it appears that the agreement has been made in the name of a partnership or joint venture, or an agent, especially when the nature of the entity named as a party or the names of the parties to the partnership or venture do not affirmatively appear in the writing. (*Milonas* v. *Sarantitis,* 109 Cal.App. 343, 344 [292 P. 978]; *Caspary* v. *Moore,* 21 Cal.App.2d 694, 698 [70 P.2d 224]; *Purviance* v. *Shostak,* 90 Cal.App.2d 295, 297 [202 P.2d 755]; *Southern Pac. Co.* v. *Von Schmidt Dredge Co.,* 118 Cal. 368 371 [50 P. 650]; *Escondido Oil etc. Co.* v. *Glaser,* 144 Cal. 494, 499 [77 P. 1040]; 18 Cal.Jur.2d, § 281, p. 772.) In *Southern Pac. Co.* v. *Von Schmidt Dredge Co., supra,* at page 371, the court said: "Thus the rule is well settled that where a reading of a simple contract, however inartificially it may be drawn, discloses that it is executed for or on behalf of a principal, or discloses an intent to bind such principal, or even leaves the matter one of doubt, parol evidence may be employed to determine whose contract it is, and this even in cases where the instrument is sufficiently clear in its terms to bind the agent. This is not contradicting by parol the terms of a written instrument, for, as has been said, 'It is no contradiction of a contract, which is silent as to the fact, to prove that a party is acting therein not on his own behalf, but for

another. "This does not deny," said Parke, B., "that it is binding on those whom, on the face of it, it purports to bind; but shows that it also binds another, by reason that the act of the agent, in signing the agreement in pursuance of his authority, is in law the act of the principal." ' (Bishop on Contracts, § 1084.)"

█ The sixth amended complaint states a cause of action and hence it was erroneous to sustain the general demurrer thereto.

The demurrers also contain numerous special grounds, such as want of capacity to sue, joinder of separate causes of action without separately stating them, uncertainties, ambiguities and unintelligibility. █ Since the enactment of section 472c, Code of Civil Procedure, in 1939, and the ruling in *Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713, 718-720 [128 P.2d 522, 141 A.L.R. 1358], the rule has been as stated in *Columbia Pictures Corp.* v. *DeToth,* 26 Cal.2d 753, 762 [161 P.2d 217, 162 A.L.R. 747] : "When a complaint is good as against a general demurrer, it is erroneous for the trial court to sustain the demurrer without leave to amend because of defects in the form of pleading. This is not to hold that the complaint is not subject to special demurrer. Upon the remanding of the cause the trial court may in its discretion require the clarification of uncertainties or ambiguities in the pleading." The reason is explained in *Wennerholm* v. *Stanford University School of Medicine,* *supra,* at page 718: "Where a complaint is sufficient against a general demurrer, however, and any uncertainties or ambiguities in the pleading can be corrected by amendment, it is apparent that denial of leave to amend results in a disposition of the cause upon technical grounds alone. The plaintiff who has stated a cause of action in such a case is denied a trial on the merits of his action if any of the grounds of special demurrer is well taken, despite the fact that the deficiencies can be corrected. It has been held, under such circumstances, that denial of leave to amend constitutes an abuse of discretion even though it be conceded that the trial court had authority to sustain the special demurrer because of defects in the form of the pleading." The plaintiff does not come within that category, for he expressly waived any right to amend. The court, having sustained the demurrers *upon general and special grounds,* asked counsel for plaintiff: "Do you wish time to plead?" to which counsel said, "No, your Honor. We will stand on the complaint," and the

court then said, ''The record will show that the plaintiff declines to amend, state that they do not wish to amend.''
█ Both before the enactment of section 472c, Code of Civil Procedure (*Aalwyn* v. *Cobe*, 168 Cal. 165 [142 P. 79]; *California Trust Co.* v. *Cohn*, 214 Cal. 619, 623 [7 P.2d 297]; *Cook* v. *Maier*, 33 Cal.App.2d 581, 583 [92 P.2d 434]; *Jackson* v. *Lacy*, 37 Cal.App.2d 551, 560 [100 P.2d 313]), and since that time (*Mulligan* v. *Wilson*, 103 Cal.App.2d 664, 668 [229 P.2d 858]; *Metzenbaum* v. *Metzenbaum*, 86 Cal.App.2d 750, 753 [195 P.2d 492]), a refusal to amend is fatal to plaintiff's position if any of the special grounds of demurrer are well taken.

One of the special grounds in this case is that plaintiff has no capacity to sue in his individual capacity. It was held in *Klopstock* v. *Superior Court*, 17 Cal.2d 13, 18 [108 P.2d 906, 135 A.L.R. 318], that ''a special demurrer for want of capacity to sue raises only the question of whether any general legal disability exists, such as infancy or insanity, or want of title in the plaintiff to the character in which he sues.'' At page 19 it is said: ''Cases have held that a general demurrer for failure to state a cause of action should be sustained where the complaint may state a cause of action in someone, but not in the plaintiff.'' To the same effect is *Parker* v. *Bowron*, 40 Cal.2d 344, 351 [254 P.2d 6]. Respondents' real point is that plaintiff is not entitled to sue as a member of the joint venture known as L. M. Engineering Company and Associates, because the parol evidence rule precludes his showing himself to be such. This point has been ruled adversely to respondents, *supra*. █ The claim that one member of a joint venture may not maintain individually an action such as this is disposed of by the case of *San Francisco Iron etc. Co.* v. *American Milling etc. Co., supra*, 115 Cal.App. 238, and similar cases above cited. This same claim appears in various forms in the special demurrer, and all of those specifications are misplaced.

Another ground of special demurrer is joinder of two or more causes of action without separate statement, i.e., damages for breach of the joint venture agreement and action for accounting and dissolution. *San Francisco Iron etc. Co.* v. *American Milling etc. Co., supra,* and similar cases show this contention to be unsound. █ Plaintiff in a court of equity is entitled to any and all appropriate relief for the single wrong of excluding him from the joint venture of

which he is a member and diverting the assets and business thereof to another entity or entities in which he is not permitted to participate.

 Defendants attempt to raise the statute of limitations (Code Civ. Proc., § 339, subd. 1) with respect to plaintiff's claim for compensation. The complaint avers that plaintiff was ousted in March, 1952, and payment of his checks stopped on March 29, 1952. The original complaint was filed on June 4, 1952, and the sixth amended complaint on July 15, 1954. The compensation claim is but part of the right to an accounting which accrued in March, 1952, and the four-year statute of limitations is applicable. (16 Cal.Jur. § 83, p. 479.)

Various specifications of uncertainty, ambiguity and unintelligibility are made. Each has been examined and found to be not well taken. In reaching this conclusion we have kept in mind the rule that a demurrer must be overruled if it is directed to the entire complaint (as here) and one or more counts thereof are not vulnerable to the grounds alleged. (*Shook* v. *Pearson*, 99 Cal.App.2d 348, 351 [221 P.2d 757]; *Brandt* v. *Brandt*, 178 Cal. 548, 550 [174 P. 55].) Also, if the complaint is good against one or more of joint demurrants the demurrer must be overruled as to all. (*Hirshfeld* v. *Weill*, 121 Cal. 13, 14 [53 P. 402]; *Asevado* v. *Orr*, 100 Cal. 293, 300 [84 P. 777]; *Associated Oil Co.* v. *Mullin*, 110 Cal.App. 385, 390 [294 P. 421].)

There was error in sustaining the special as well as the general demurrers to the sixth amended complaint.

The judgments in favor of the Mooradian group and the Reeder group of defendants (in No. 20972) are reversed. The judgment in favor of defendant Murchison (in No. 20859) is reversed.

White, P. J., and Doran, J., concurred.

Petitions for a rehearing were denied December 30, 1955, and respondents' petitions for a hearing by the Supreme Court were denied February 1, 1956. Schauer, J., was of the opinion that the petitions should be granted.