[Civ. No. 12799.   Second Dist., Div. One.   Mar. 18, 1942.]

ZELMA THOMAS, Appellant, v. STUDIO AMUSEMENTS, INC. (a Corporation), et al., Respondents.

Randall J. Hood for Appellant.

Fred O. Reed, Richard L. Kirtland and W. H. Abrams for Respondents.

DORAN, J.—This is an appeal from separate judgments, notwithstanding the verdict of a jury in favor of plaintiff in an action for damages for injuries sustained in a fall on roller skating rink. The complaint contained two separate causes of action, the first based on the alleged negligence of respondent Studio Amusements, Inc., in failing, as the proprietor of the rink, to properly supervise the skaters thereon, and the second based on the alleged negligence of respondent Berman in improperly handling plaintiff in the first aid room at the rink after the accident, which improper handling was alleged to have aggravated plaintiff's injuries.. Upon her information and belief plaintiff alleged that respondent Berman was employed by respondent Studio Amusements, Inc. At the opening of plaintiff's case the plaintiff conceded that the first count of the complaint did not state a cause of action against respondent Berman and the court sustained the objection of respondent Studio Amusements, Inc., (hereinafter for convenience referred to as respondent corporation), to the second count as not stating a cause of action against the latter respondent. The two causes of action were thus separated and the trial proceeded as a joint trial of two separate cases. Defendants moved for a nonsuit at the close of plaintiff's case and for a directed verdict after both sides had rested. Both motions were denied and the cause was submitted to the jury, which rendered its verdict in favor

of plaintiff and against both defendants. Thereupon the motions of defendants for judgment notwithstanding the verdict were granted and such a judgment was entered in favor of each defendant. In accordance with the settled rule on an appeal from a judgment notwithstanding a verdict, the evidence must be viewed in the light most favorable to the appellant and every reasonable inference in her favor must be drawn therefrom. Respondents do not contend otherwise, but argue that there is no substantial evidence in appellant's favor.

The first cause of action of appellant's complaint charged respondent corporation with negligence in failing to control reckless and speedy skating on respondent's roller skating rink, and that, "as a proximate result of said great speed, one of said skaters collided with plaintiff," thereby knocking plaintiff (appellant) to the floor of the rink and causing the injuries complained of. The second cause of action charged respondent Berman with falsely representing himself to appellant as a medical doctor and thereupon handling appellant in a negligent manner in the first aid room adjoining the rink, and in representing to appellant that she had only suffered a slight injury, when in fact she had sustained a fractured hip; all of which, appellant in effect alleged, had aggravated her injuries. Evidence introduced upon each count was admitted only against the respondent to which it applied.

Appellant, in company with two friends, man and wife, visited the roller skating rink maintained by respondent corporation. The man accompanying appellant did not skate but sat in one of the loge boxes at the side of the rink, while his wife and appellant skated. Appellant sustained her fall during a period when ladies only were permitted to skate. When appellant fell, this skating period for ladies only had been going on for an undetermined time, possibly three minutes. The evidence as to the cause of her fall is not conclusive, but it may fairly be inferred therefrom that appellant's fall was caused by a speedy blond skater who was ducking in and out among the other skaters and who cut across the path of some of the other skaters. This blond woman's skate was seen to strike that of another skater, causing the latter skater to fall, thus precipitating the fall of three other skaters, appellant among them. Respondent corporation argues at length against drawing such a conclusion from the evidence, contending that

the testimony of the witnesses reveals no connection between the blond skater's actions and appellant's fall; but the evidence is at least reasonably subject to the interpretation here given, and such an interpretation in appellant's favor must be adopted. During the skating period when appellant fell, some of the skaters were skating normally, others were skating fast, about half of the skaters were skating twice as fast as appellant. Some of the skaters were two-stepping or "rexing." There were probably 500 persons skating at the rink that evening, though it does not appear how many were skating during the period when appellant fell. The dimensions of the rink floor are approximately 100 by 200 feet. At the time of appellant's fall there was a skating instructor stationed at each of the four corners of the rink, and the skaters skated around on the outside of those four instructors. There were also two lady instructors on the floor. In addition there were four other instructors spaced around the rink. These latter instructors were in uniform and skated backwards around the rink in the direction of the skaters. The manager of the rink was out in the middle of the floor at the time. The guards or instructors were instructed that if they saw anyone skating "at such a speed or in such a manner that the other skaters would be in danger, beyond the normal risk of skating, to stop them or to slow them down as the necessity of the situation seemed to require." It was stipulated at the trial that these instructors, if called to the stand, would testify that on the evening in question they did not see the blond woman skater and could not recall any incident that occurred prior to appellant's accident. The gentleman who accompanied appellant to the rink, and who was sitting in the loge box, had his attention drawn to the blond skater because of her manner of skating; and he then watched this blond skater until her skate struck that of another skater as above mentioned. The length of time this witness observed this blond skater was not determined, though there is some evidence of the approximate distance over which she traveled during the time she was thus observed. After her fall appellant was unable to rise and she was picked up from the floor by two instructors, who put her on her feet and rolled her on her skates off the floor to the first aid room, where appellant was laid down on a table. Here respondent Berman, who was dressed in a white coat or jacket, told appellant he was a doctor, in answer to appellant's question to that effect.

Berman stretched, pulled and rubbed appellant's leg and "pounded" her thigh with his open hand. He informed appellant that her injury was not serious and that she would be able to go to work the next day. He then assisted appellant to her feet and to walk out of the rink to a waiting car. Appellant was unable to get into the car and sat sideways on the running board, from which position Berman pulled appellant into the car and assisted her to the seat.

The extent of appellant's injuries is not disputed. She suffered a cervical fracture of the femur of the left leg, commonly designated as a broken hip. Appellant was operated upon twice, the second operation being necessitated because of a definite non-union of the bones. There had been a bad disturbance of the circulation through the blood vessels of the bone, these blood vessels having been ruptured so that circulation could not cross the fracture line. A shortening of the leg has taken place through absorption of the bone. A third operation is in prospect wherein a section of bone from the leg below the knee will be transplanted to the fracture line in the hip. Appellant's leg has thus been shortened about an inch and appellant will never again be in a normal condition with regard to the use of this leg. Appellant's physician, testifying as an expert in her behalf, stated that under the circumstances appellant should not have been moved from the spot where she fell until splints or a suitable substitute had been applied to the fracture to prevent movement between the broken fragments of bone. The physician's testimony indicates that the rupture of the blood vessels, which was responsible for the absorption of the bone fragments and consequent non-union of the bone, would be apt to be caused the first time weight was put upon the fractured hip; which of course was when the rink attendants first lifted appellant to her feet and rolled her to the first aid room, and before respondent Berman had anything to do with her. The doctor stated that "practically all the damage would be done the first time." However, he also indicated that the rest of her handling would be cumulative. It is to be noted that respondent corporation was not charged with negligence in improperly handling appellant after her fall. Respondent Berman contends that the expert testimony definitely established that Berman's actions and advice did not aggravate or add to appellant's injuries or cause her damage. However, the testimony referred to is by no means positive and unequivocal and the statements on the question are all qualified.

Upon this state of the record the question here to be determined is whether there was sufficient evidence to submit the question of the liability of the respective respondents to the jury. If so, the trial court must be held to have abused its discretion in granting judgment notwithstanding the verdict of the jury.

Upon the pleadings and the evidence in support thereof, the liability of respondent corporation is necessarily predicated upon a theory that the blond skater's actions were of such a nature and extent that, under the circumstances, the respondent's employees should have seen the same in time to have prevented a continuance thereof. One of respondent corporation's defenses was the assumption by appellant of the risks incident to skating upon such a rink; but it cannot be argued that one of the normal risks involved is the reckless action of other skaters capable of being prevented by guards who are stationed upon the rink for the protection of patrons. While the operator of a skating rink is not an insurer of his patrons' safety, nevertheless, he owes a duty to protect them from risks other than those normally incident to the sport.

From the evidence presented the jury might properly infer that the blond skater's actions caused appellant's fall; that the blond's actions were reckless; and from the description of those actions as given by the witness it could be inferred that the skater's actions had continued for a longer time than the period she was observed. The witness was sitting in a loge box, and as the skaters passed before him his attention was attracted to the blond skater by the manner in which she was skating. There is nothing to show that her speed and her actions were the result of a sudden spurt. On the contrary, the evidence tends more reasonably to support an inference that the blond skater's actions had continued during the time she was upon the rink. The skating period in question had been in progress for approximately three minutes when appellant's accident occurred. There is no evidence to show when the blond skater came upon the skating floor, but from the points marked by the witness on the chart in evidence, indicating where the witness observed the blond skater, it might reasonably be inferred that the blond had not just entered upon the rink. In fact, the markings upon the chart in this respect would support an inference that the skater in question had traveled over a considerable portion of the length of the rink. From the evidence, and from the ordinary course

of the events thereby revealed, the jury might reasonably infer that the rink floor, during the skating period reserved for ladies only, was not as crowded as it would be during a period open to all skaters. Respondent corporation admits that at the time of the accident there were ten attendants, and the manager of the rink, upon the skating floor, and that the attendants were charged with the duty of supervising the conduct of the skaters. While, upon the foregoing evidence, a jury might decide the case either for or against appellant, it cannot be said that the conclusion reached was necessarily the result of pure surmise or conjecture. The evidence presented a question of fact as to respondent corporation's liability, and upon that question, the jury was the final arbiter, and their conclusion cannot be disturbed when supported by substantial evidence, however conflicting.

A like situation is presented in respect to the case against respondent Berman. As already pointed out, the testimony of the experts did not definitely establish that respondent Berman's handling of appellant did not or could not cause aggravation of her injuries. The effect of this expert testimony was to indicate that the removal of appellant from the rink floor in the first instance was *apt* to be the principal cause of aggravation. This testimony by no means eliminated Berman's actions as a possible cause of aggravation. The question was left open for the jury to decide upon all the evidence presented. Respondent Berman calls attention to the testimony of a doctor, called as a witness in Berman's behalf, to the effect that a physician would have done *approximately* the same as Berman. Such testimony is of no avail. It is not a question of what a qualified medical practitioner would have done under the circumstances, but is rather a question of whether Berman under like circumstances should have assumed the role and duties of a doctor. If he did assume such a role and negligently caused aggravation of appellant's injuries thereby, manifestly, he could not avail himself of the defense of having used the standard of skill and care usually possessed or rendered by physicians in the locality. Such a defense is peculiarly the privilege of the medical profession.

Respondent Berman cites *Owl Drug Co.* v. *Crandall,* 52 Ariz. 322 [80 Pac. (2d) 952, 120 A. L. R. 1521], but the case is not in point. In that case the evidence showed that the plaintiff's injuries may have resulted from one of several causes, and that only one of the causes could be attributed to plaintiff's negligence. Here the question is whether Berman's

acts aggravated appellant's injuries, regardless of what the cause of appellant's injuries was and regardless of what else was done to appellant. Upon this question there was sufficient evidence to submit to the jury. In both instances the trial court abused its discretion in granting judgments in favor of respondents notwithstanding the verdict.

The judgments appealed from are reversed and the trial court is ordered to enter judgments in accordance with the verdict of the jury.

York, P. J., and White, J., concurred.