[L. A. No. 28847. In Bank. Aug. 15, 1966.]

CHARLOTTE LEE TAYLOR, Plaintiff and Appellant, v. CENTENNIAL BOWL, INC., Defendant and Respondent.

116

Hildebrand & McLeod and John B. Mestad for Plaintiff and Appellant.

Ball, Hunt & Hart and Douglas Dalton for Defendant and Respondent.

PETERS, J.—Charlotte Lee Taylor brought this action for damages for her injuries sustained as the result of an assault committed upon her by a third person while she was an invitee on defendant's business premises. She alleged that defendant was negligent in failing to protect her adequately, as a patron, from a known danger. After both parties had submitted their evidence, the court granted a motion for a directed verdict in favor of defendant. ■ Plaintiff appeals from the judgment based on that directed verdict.

On such an appeal the evidence most favorable to the plaintiff must be accepted as true. ■ That evidence, as shown by the record, is to the effect that on Sunday evening, June 10, 1962, plaintiff drove to the Woodley Lewis Sportsman Bowl, a large bowling alley in Compton which is owned and operated by defendant corporation. For about four months prior to this date plaintiff had been participating in a bowling league that met there two nights each week. The bowling center had opened for business six months prior to the events herein described. It is located in Compton in an economically depressed area. The establishment consists of a large building which contains 32 bowling lanes, a coffee shop, a bar and cocktail lounge accommodating 100 patrons and a "combo," a billiard room, and a nursery. There are parking lots adjacent to the front and rear of the building.

When plaintiff arrived at the bowling center about 10 p.m., she parked her car in the lot at the rear of the building and locked it. She then went into the cocktail lounge where she spent most of the next four hours having two or three drinks with Mabel Evans, a friend whom she had previously arranged to meet there, and Danny Porter, a friend of Miss Evans. While plaintiff was at the bar, John Charles Walters, a man

whom she had never seen before, approached her and said without encouragement from her, "Hi, babe. Let me go home and go to bed with you." Plaintiff rebuffed him and Walters left. About two hours later he again approached her and again requested her to go to bed with him. Plaintiff told him that she did not go to bed with men, and Walters walked away. At the time of her first confrontation in the bar with Walters, Don Bishop, a professional football player employed by defendant as a "bouncer," was "About four or five bar seats away." She stated that at the time of the second confrontation Bishop was "in the immediate proximity" within "hearing distance." Plaintiff testified that Walters did nothing to indicate that he intended to harm her, and that she felt no reason to be afraid of him, although she did report to Don Bishop that someone had acted offensively toward her.

Shortly before 2 a.m. when the bar closed, as plaintiff, Mabel Evans and Danny Porter were preparing to leave, Bishop said to plaintiff, "Charlotte, don't go outside because that goofball is out there." Plaintiff replied, "Don, you know it's around 2 o'clock and I have to go home and go to work." Bishop then walked with her to the door leading to the lot where her car was parked, and said, "Good night, Charlotte, and please be careful," and returned to the bowling alley. ·

Upon entering the parking lot, which was well lighted, plaintiff left Porter and Miss Evans and walked toward her car. When she reached the car she found Walters there, apparently waiting for her. He said, "Did you understand what I said? Did I tell you to go home with me?" Plaintiff told him to "go to hell," and he ran at her and "started cutting" her with a knife in the chest, abdomen and throat. She retaliated by slashing him across the face with a combination knife and nail file which she carried in her purse. When plaintiff turned to get in her car, Walters cut her in the back. Plaintiff then collapsed, one of the stabs having pierced her right lung.

As a result of this attack, plaintiff was taken to the hospital where she remained unconscious for six weeks. After regaining consciousness, her right arm became paralyzed, she could not move her legs, and she could not see. Plaintiff remained in various California hospitals until December 1962. From the time of the assault until the time of trial she was a ward of Los Angeles County. After trial plaintiff returned with her mother to Ohio, and it appears that she is now receiving care and aid from the State of Ohio. While plaintiff has partially recovered her sight, expert medical testimony, which is undis-

puted, established that the spastic condition of her extremities will remain permanent.

Plaintiff put Officers Robert Black and Stephen Ryer of the Compton Police Department on the stand. Officer Ryer testified that he was called to the scene immediately after the assault and made an investigation. Officer Black testified that he was in charge of the police records of all crimes and arrests at the bowling center during the six months prior to the attack on plaintiff. Through these police witnesses plaintiff sought to elicit evidence that during this six-month period, which commenced with the time the bowling center initially opened for business, defendant's business premises were habitually the scene of disturbances which required the police to intervene and to make frequent arrests. The defense objected to every attempt to introduce this testimony on the grounds that it was irrelevant, immaterial, and hearsay. The trial court sustained all of these objections.

Plaintiff made an offer of proof to the effect that Officer Ryer would testify that on 10 or 12 occasions during the six months prior to the assault he had been called to the center "to quell disturbances" and to transport to the police station "various law violators," who had already been arrested by officers who were working at the center. With respect to the testimony of Officer Black, plaintiff offered to prove "that from the period of December 6, 1961 to and including June 10, 1962 police officers of the City of Compton . . . were called to the Woodley Lewis Centennial Bowl [sic] for alleged law violations a total of 273 times and made a total of 160 arrests . . . ; that during that period police officers . . . were called on nine alleged assaults and mayhem violations and made four arrests . . . ; that they were called 16 times to investigate alleged disturbances . . . during said period and made 8 arrests; . . . that they were called to investigate 95 alleged drunk charges during said period at the same place and made 95 arrests for drunkenness;

"And the witness would testify that of the balance of the 273 calls that were made and the balance of the 160 arrests that were made they were for . . . miscellaneous offenses which included traffic warrants, curfew violations, drug law violations, robbery, loitering and vagrancy, driving while intoxicated, hit and run accidents, gambling and possession of miscellaneous weapons." Counsel stated that he was offering this testimony "for the purpose of showing notice on the part of the defendant Woodley Lewis and the Centennial Bowl

Corporation of many . . . law violations, including particularly assaults, disturbances, larcenies, [and] drunk violations . . .'' that were taking place on their business premises.

Objections were made to both offers of proof by the defense on the grounds that such testimony would be irrelevant, incompetent and immaterial, and also on the ground that the questions called for hearsay. These objections were sustained.

Woodley Lewis, the real owner of the center, was called by plaintiff as an adverse witness pursuant to section 2055 of the Code of Civil Procedure. This witness testified, among other things, that he ran the center and set its policy; that parts of the center were open 24 hours a day; that he paid the city to assign off-duty police officers to the center; that he also hired two ''floor men'' or ''bouncers'' to take care of any difficulties that might arise among the patrons; that a utility room at the center was used as a place to detain persons involved in disturbances or law violations; and that frequently the security officers had to evict troublemakers from the premises. When asked if he had seen patrons ''being bumped over the head with bottles'' and ''hit with fists,'' Lewis replied that ''I have seen some laceration, if you want to call it that.'' He also stated that large numbers of people would frequently come to the bowling center after 2 a.m., when other bars and restaurants in the area closed; and that recently one of his bouncers had been cut on the nose by an obstreperous patron.

The defense called 10 witnesses. Their testimony did not contradict plaintiff's claim that there had been disturbances at the center and that defendant had notice thereof, but did include statements which tended to contradict plaintiff's testimony about what transpired in the cocktail lounge preceding the assault on her.

Robert Ledet and William Dykes were called as rebuttal witnesses by plaintiff. They testified that at separate times, a few months before the assault on plaintiff, they witnessed assaults on the premises of defendant's establishment. Dykes' testimony concerned an assault upon himself by three youths while he was in defendant's parking lot at approximately 2:30 a.m. attempting to unlock his parked car.

The directed verdict was based on the theory that there was no evidence that defendant had violated any duty owed to plaintiff. It is the correctness of that determination that is here under attack. ■ Such a verdict may be properly granted if and only if, after disregarding conflicting evidence, and indulging every legitimate inference which may be drawn from the evidence in plaintiff's favor, it can be said that there

is no evidence of sufficient substantiality to support a jury verdict in her favor. (*Blumberg* v. *M. & T. Incorporated,* 34 Cal.2d 226, 229 [209 P.2d 1]; *Walters* v. *Bank of America etc. Assn.,* 9 Cal.2d 46, 49 [69 P.2d 839, 110 A.L.R. 1259]; *Estate of Flood,* 217 Cal. 763, 769 [21 P.2d 579]; *Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768]; *Shaw* v. *Colonial Room,* 175 Cal.App.2d 845, 847-848 [1 Cal.Rptr. 28]; 31 Cal.L.Rev. 461; 2 Witkin, Cal. Procedure (1954) Trial, § 125, pp. 1857-1858.)

The problem requires a determination of the duty owed by the proprietor of a business establishment to his business invitees. ■ Such a proprietor is, of course, not an insurer of the safety of his invitees, but he is required to exercise reasonable care for their safety and is liable for injuries resulting from a breach of this duty. (*Edwards* v. *Hollywood Canteen,* 27 Cal.2d 802, 809 [167 P.2d 729]; *Hinds* v. *Wheadon,* 19 Cal.2d 458, 460 [121 P.2d 724]; *Winn* v. *Holmes,* 143 Cal.App.2d 501, 503 [299 P.2d 994]; *Vaughn* v. *Montgomery Ward & Co.,* 95 Cal.App.2d 553, 556 [213 P.2d 417]; 65 C.J.S. § 45, p. 521 et seq.; 2 Harper and James, The Law of Torts, § 27.12, pp. 1478-1488.) ■ The general duty includes not only the duty to inspect the premises in order to uncover dangerous conditions (*Sexton* v. *Brooks,* 39 Cal.2d 153, 156 [245 P.2d 496]; Rest.2d Torts, § 344, com. f; 156 A.L.R. 1221), but, as well, the duty to take affirmative action to control the wrongful acts of third persons which threaten invitees where the occupant has reasonable cause to anticipate such acts and the probability of injury resulting therefrom. (*Edwards* v. *Hollywood Canteen, supra,* 27 Cal.2d 802, 809-810; *Winn* v. *Holmes, supra,* 143 Cal.App.2d 501, 503-504; *Thomas* v. *Studio Amusements, Inc.,* 50 Cal.App.2d 538, 543 [123 P.2d 552]; Rest.2d Torts, § 344; 70 A.L.R.2d 628, 651-653; Harper and Kime, *The Duty to Control the Conduct of Another,* 43 Yale L.J. 886; Note, 35 Mich.L.Rev. 843.)[1]

■ Defendant argues that it fulfilled whatever duty of

---

[1] These rules have been applied by reviewing courts in other jurisdictions to allow recovery by plaintiffs in cases factually similar to the one under consideration. (See, e.g., *Corcoran* v. *McNeal,* 400 Pa. 14 [161 A.2d 367]; *Rommel* v. *Schambacher,* 120 Pa. 579 [11 A. 779]; *Peck* v. *Gerber,* 154 Ore. 126 [59 P.2d 675, 106 A.L.R. 996]; *Exton* v. *Central R. Co.,* 62 N.J.Law 7 [42 A. 486]; *Molloy* v. *Coletti,* 114 Misc. 177 [186 N.Y.S. 730]; *Moone* v. *Smith,* 6 Ga.App. 649 [65 S.E. 712], later app., 7 Ga.App. 675 [67 S.E. 836]; *Reilly* v. *180 Club,* 14 N.J. Super. 420 [82 A2.d 210]; *Miller* v. *Derusa* (La.App.) 77 So.2d 748; *Greco* v. *Sumner Tavern, Inc.,* 333 Mass. 144 [128 N.E.2d 788]; *McFadden* v. *Bancroft Hotel Corp.,* 313 Mass. 56 [46 N.E.2d 573]; *Windorski* v.

care it owed to plaintiff by the warning given by its employee, Don Bishop, advising plaintiff not to go outside "because that goofball is out there." It is contended by defendant that plaintiff eliminated any material factual dispute on the duty issue by conceding that she received this warning, and that therefore the directed verdict was, as a matter of law, proper. It is urged that the duty of care owed by a proprietor of a business establishment to his business invitees is fully performed by a warning such as was given here. In support of that contention, defendant relies upon section 348 of the first Restatement of Torts, as approved in 1959 by the decision of this court in *Hunter* v. *Mohawk Petroleum Corp.*, 51 Cal.2d 439 [334 P.2d 193]. Defendant argues that the rule of that case is controlling here.

Section 348 and the *Hunter* case are not here controlling, for several reasons. In the first place, subsequent to the *Hunter* case, the American Law Institute repudiated section 348 by omitting it in the Restatement Second of Torts; matters previously covered by section 348 are now dealt with in new section 344. In the second place, *Hunter, supra,* is distinguishable on its facts from the instant case.[2] Under such circumstances the general language appearing in *Hunter* indicating that a warning alone is sufficient under old section 348 must be read in connection with the facts of that case. If it can be interpreted as going beyond those facts such language should be and is disapproved.

Moreover, under the facts of the instant case, defendant did not discharge its duty to plaintiff under the old or new sections of the restatement.

Section 348 of the first Restatement of Torts provided: "A . . . possessor of land who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the land for such a purpose for bodily harm caused to them by the accidental, negligent or intentionally harmful acts of third persons or animals if the possessor by the exercise of reasonable care could have (a) discovered that such acts were being done or were about to be

---

*Doyle,* 219 Minn. 402 [18 N.W.2d 142]; *DeHart* v. *Travelers Ins. Co.* (La.App.) 10 So.2d 597; *Mastad* v. *Swedish Brethren,* 85 Minn. 40 [85 N.W. 913]; *Klingbeil* v. *Truesdell,* 256 Minn. 360 [98 N.W.2d 134].)

[2]In *Hunter,* unlike the present case, the third person who caused injury to the plaintiff was acting lawfully. Further, as noted in our opinion, there was no evidence in *Hunter* that the third person was acting negligently, nor was there any evidence of facts which could possibly have put the defendant on notice that the third person might act negligently. (51 Cal.2d at pp. 441-442.)

done, and (b) protected the members of the public by (i) controlling the conduct of third persons, or (ii) giving a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive from . . . [him].''

The view taken in this section, that once an occupier of land has learned of dangerous conditions on his premises he may discharge all further duty to his invitees by simply giving them ''a warning adequate to avoid the harm,'' was widely criticized by many leading authorities. (See, e.g., 2 Harper and James, The Law of Torts (1956) § 27.13, pp. 1489-1498; James, *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees*, 63 Yale L.J. 605, 628-629; Prosser on Torts (3d ed. 1964) § 61, at pp. 404-405. See also Fleming, The Law of Torts (1957) pp. 448-450.)[3] In the instant case the warning given plaintiff does not satisfy even the criteria of the superseded rule of section 348. Bishop's warning to plaintiff did not inform her of the specific nature of any possible harm that she might expect upon entering the parking lot. On the basis of the evidence introduced, the ''bouncer'' must have been apprised of the potential danger to plaintiff of assault by ''the goofball,'' as he described Walters, or by other persons. There is no evidence to show that plaintiff was put on similar notice of this specific danger.[4] Moreover, it must also be remembered that at the time she left the cocktail lounge it was 2 a.m., the cocktail lounge was closing, and she had asserted her need to go home in order to prepare for work the next day. Had the warning adequately informed plaintiff of the danger, which it did not, the warning would not have enabled her to avoid the harm without relinquishing the right to enter the parking lot and obtain her car. This is a right which, as its invitee, plaintiff was entitled to receive from defendant. Defendant's failure to secure this right is, in and of itself, a breach of the duty which is defined in section 348. Under such

[3]Professor James, for example, maintains that the position taken in section 348 ''is a highly doubtful [proposition] both on principle and authority.'' He has written that ''the invitee expects the premises to be prepared for him only up to the point where he knows they are not. But this should not be conclusive. Reasonable expectations may raise duties, but they should not always limit them. The gist of the matter is unreasonable probability of harm in fact. And when that is great enough in spite of full disclosure, it is carrying the quasi-sovereignty of the landowner pretty far to let him ignore it to the risk of life and limb.'' (*Id.*, 63 Yale L.J. 605, 623, 628.)

[4]It should be noted, in this connection, that defendant moved at trial to amend the answer to include defenses of contributory negligence and assumption of risk.

circumstances, including the fact that Bishop could have easily protected her from the danger he apparently anticipated by simply accompanying plaintiff to her car, it cannot be held that the mere admonition not to enter the parking lot because "that goofball is out there" satisfied the duty owed plaintiff. A warning will not be sufficient where it is apparent that, "because of lack of time or the character of the conduct to be expected, it will not be effective to give protection." (*Winn* v. *Holmes, supra,* 143 Cal.App.2d 501, 504-505, quoting Prosser on Torts (1st ed. 1941) pp. 643-644; see also *McFadden* v. *Bancroft Hotel Corp., supra* (Mass.) 46 N.E.2d 573, 575, and Prosser on Torts (3d ed. 1964) p. 405 and cases cited at fn. 65.)

 This conclusion receives further support from the provisions of the present version of section 344 of the Restatement of Torts, which we think expresses the rule that should be presently applied. Under this section, and under the rule announced in the cases and by the authorities last cited, it is quite clear that a warning of danger will not always fulfill a land occupier's duty owed to his invitee, and that whether such warning will suffice in the circumstances of a particular case is normally a question of fact for the jury. Section 344 provides that "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

 Section 344 is clarified, with respect to the type of factual situation now before us, by the comment to the section that "There are . . . many situations in which the possessor cannot reasonably assume that a warning will be sufficient. He is then required to exercise reasonable care to use such means of protection as are available, or to provide such means in advance because of the likelihood that third persons . . . may conduct themselves in a manner which will endanger the safety of the visitor." (Rest.2d Torts, § 344, com. d.)

 If we disregard, as we must, the evidence in conflict with plaintiff's evidence (*Estate of Flood, supra,* 217 Cal. 763, 769; *People* v. *Mahoney,* 13 Cal.2d 729, 736 [91 P.2d 1029]; 48 Cal.Jur.2d, § 148, p. 187), and if we give to the evidence

tending to establish negligence all the value to which it is legally entitled, there is in this case evidence of sufficient substantiality to support a verdict in favor of plaintiff. It must be held, therefore, that it was error for the trial court to grant defendant's motion for a directed verdict and thereby to take from the jury the resolution of the factual issues presented. (*Golceff* v. *Sugarman,* 36 Cal.2d 152-153 [222 P.2d 665] ; *Estate of Flood, supra,* 217 Cal. 763, 768-769 ; see also *Windorski* v. *Doyle, supra* (Minn.) 18 N.W.2d 142 ; and *Mastad* v. *Swedish Brethren, supra* (Minn.) 85 N.W. 913.)

Plaintiff claims that the trial court also erred in sustaining objections to offers of proof respecting proposed testimony by Officers Ryer and Black. We consider these issues because of the likelihood that they will arise again on retrial.

The proffered testimony of Officer Ryer should not have been excluded. The witness would have testified that he frequently had been summoned by defendant to the latter's premises to quell disturbances there of a violent nature. This testimony would tend to establish that defendant had notice of the disturbances and of their nature which caused him to seek the assistance of the police, and inferentially, therefore, that he also had notice of the danger to his patrons from assault by third persons. The officer's testimony was not merely cumulative on the issue of notice, because it was also relevant to indicate the extent of the danger to be guarded against, and thus indicated the nature of defendant's duty.

Evidence which tends logically, naturally, and by reasonable inference to prove a material issue is admissible as to relevance. (Code Civ. Proc., §§ 1832, 1870, subd. 15 ; *People* v. *Jones,* 42 Cal.2d 219, 222 [266 P.2d 38].) Officer Ryer was competent to testify to the facts alleged in plaintiff's offer of proof since he claimed that he personally responded to the summons by defendant, investigated the alleged disturbances, and transported various law violators to police headquarters.

Ryer's proposed testimony that defendant sought police assistance was offered as evidence that disturbances had occurred and that defendant knew of them in order to show defendant's state of mind. Thus this evidence was not objectionable as hearsay, since the hearsay rule does not forbid the introduction of evidence that a request has been made when the making of the request is significant irrespective of the truth or falsity of its content. (*Werner* v. *State Bar,* 24 Cal.2d 611, 621 [150 P.2d 892] ; *Johnson* v. *Nicholson,* 159 Cal.App.2d

395, 411 [324 P.2d 307]; see 6 Wigmore on Evidence (3d ed. 1940) §§ 1789, 1790.)

As to Officer Black's proffered testimony the record is not clear as to whether the evidence was properly excluded. The hearsay objection was not valid if the police reports were admissible under the Uniform Business Records as Evidence Act. (Code Civ. Proc., §§ 1953e to 1953g.)[5] ▮▮▮ In a proper case the business records exemption to the hearsay rule is applicable to public documents, such as police reports. (*Nichols* v. *McCoy*, 38 Cal.2d 447, 449 [240 P.2d 569]; *Loper* v. *Morrison*, 23 Cal.2d 600, 608-609 [145 P.2d 1]; *MacLean* v. *City & County of San Francisco*, 151 Cal.App.2d 133, 142 [311 P.2d 158].) The problem arises, however, because business records are not admissible under this exception when they are "not based upon the report of an informant having the business duty to observe and report." (*MacLean* v. *City & County of San Francisco, supra,* at p. 143; McCormick on Evidence (1954) § 286, p. 602.) The admissibility of the instant report, therefore, depends first upon whether its contents are based on Officer Black's own observations, or the observations of other police officers or public officials whose job it is to know the facts recorded; if so, but only if so, is it then admissible under the business records exception. (*MacLean* v. *City & County of San Francisco, supra,* at p. 143; see also *Hoel* v. *City of Los Angeles*, 136 Cal.App.2d 295, 309 [288 P.2d 989]; 48 Colum. L.Rev. 920; 144 A.L.R. 727, 729-781.) This point may be clarified on the retrial.

The objection that the evidence was immaterial is unsound if defendant knew, actually or impliedly, that violent and unlawful acts were occurring on the premises. The evidence was proffered for this purpose. ▮▮▮ Such notice, however, is not shown by the mere fact that such arrests and convictions occurred. It must also be shown that they occurred under such circumstances or with such frequency that defendant must have known, or be deemed to have known, of them. The record here would seem to be sufficient in this regard. Certainly the numerous arrests and disturbances involved could not have occurred without employees of the defendant knowing of them.

---

[5] Section 1953f of the Code of Civil Procedure provides that "A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

At any rate this problem can be settled on the retrial. ▮ It should be noted that, if admissible under the rules here laid down, such testimony would be relevant not only to show knowledge of the danger on the part of the defendant but also to show the extent of the danger.

The judgment appealed from is reversed.

Traynor, C. J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Presiding Justice Wood in the opinion prepared by him for the District Court of Appeal, Second Appellate District, Division One (*Taylor* v. *Centennial Bowl, Inc.*, Civil No. 29007, filed December 28, 1965, certified for nonpublication).