[Civ. No. 32872. Second Dist., Div. Four. July 29, 1969.]

RUPERT G. YOUNG, Plaintiff and Appellant, v. DESERT VIEW MANAGEMENT CORPORATION, Defendant and Respondent.

Abrams & Fox and Martin L. Abrams for Plaintiff and Appellant.

Wyman, Bautzer, Finell & Rothman and Charles L. Fonarow for Defendant and Respondent.

DUNN, J.—This appeal is from a judgment of nonsuit entered following an opening statement made to the jury by appellant's attorney. ▉ The rules governing the granting of such nonsuit (Code Civ. Proc., § 581c) are simple: ''A nonsuit may be granted on opening statement only 'where it is clear that *counsel has undertaken to state all of the facts which he expects to prove* and it is plainly evident that acts thus to be proved will not constitute a cause of action.' (*Weyburn* v. *California Kamloops, Inc., supra* [200 Cal.App. 2d 239 (19 Cal.Rptr. 357)]; *Bias* v. *Reed, supra,* [169 Cal. 33 (145 P. 516)]; *Greenwood* v. *Mooradian, supra* [137 Cal. App.2d 532 (290 P.2d 955)]; *Wright* v. *Arcade School Dist.,* 230 Cal.App.2d 272, 275 [40 Cal.Rptr. 812].) ▉ It may

be granted where plaintiff has been afforded full opportunity to present all of the facts and such presentation shows the inadequacy of the case as a matter of law." *Palazzi* v. *Air Cargo Terminals, Inc.* (1966) 244 Cal.App.2d 190, 194-195 [52 Cal.Rptr. 817]. And also see: *Wright* v. *Arcade School Dist.* (1964) 230 Cal.App.2d 272, 275-276 [40 Cal.Rptr. 812]; *Gallegos* v. *Union-Tribune Publishing Co.* (1961) 195 Cal.App.2d 791, 796 [16 Cal.Rptr. 185]. In the present case, appellant's attorney was given an opportunity to augment his statement, did so, and only thereafter was respondent's motion for nonsuit granted.

To decide the issue, we must review the essential facts of appellant's case as outlined by his attorney, drawing therefrom all reasonable inferences favoring appellant. So considered, the following must be deemed true for purposes of this appeal: The plaintiff, aged 58, was a "handyman" who worked part time for defendant, Desert View Management Corporation doing business as "Huddle Eastland." On Friday night, January 29, 1965, he had dinner in defendant's restaurant and thereafter went into the bar. While there, a man entered the coffee shop, laid a pistol on the cash register and demanded money from Helen Olson, respondent's assistant manager-cashier. She gave him money which he put in his pocket and holding the pistol in his right pocket he grasped Helen Olson and started walking with her toward a hallway running between the coffee shop and the dining room. She broke away from him, ran through the kitchen and into the bar where appellant was seated. She said to fellow employees, "Help, I have been robbed." Marilyn Redman, a cocktail waitress, heard her and said to appellant, "A man robbed—just robbed Helen. Help. Let's get a license number." Or, according to appellant, she said, "Mr. Young, someone just held up the coffee shop. Will you go out and see if you can get the license number?" The appellant said nothing but stood up and went through a door leading outside. Other patrons were behind him. Appellant saw no cars in the parking lot or moving but he saw a man walking. He went up to the man and said, "Did you see the fellows that knocked off the coffee shop?" The man said "Yes, and I am about to knock you off, too," whereupon he drew a gun. Appellant started running across the lot but was shot in the back. As stated to the jury by counsel, the ". . . whole transaction took place in a very short period of time." At the time Helen Olson was being led to the hall by the robber, she whispered to Katherine Geisler,

a waitress, "Robbery." This waitress told the manager, Mr. Adlin, that the coffee shop had been robbed and he telephoned the police. They asked him to hold on and he went out the back door and up a ladder onto the roof of the building. None of respondent's employees told appellant the robbery was effected with a pistol. Marilyn Redman was not told of a gun and assumed no gun was involved in the robbery. When appellant went outside and saw the man walking, the man was doing so in a normal manner and did nothing to indicate to plaintiff that he was the robber or had a gun.

The West Covina police, at times, had plainclothes and uniformed officers patrolling the parking area which was a quarter of a mile long and, especially on weekends, there were also plainclothes officers from the Department of Alcoholic Beverage Control and officers from the sheriff's department present.

In summary, it appears there was an armed robbery (Pen. Code, §§ 211, 211a) committed against respondent's employee Helen Olson, who shortly thereafter escaped from the robber and told a fellow employee "Help. I have been robbed." One of these, Marilyn Redman, said to appellant, "A man robbed —just robbed Helen. Help. Let's get a license number" or "Will you go out and see if you can get the license number?"

If Redman had said only, "A man just robbed Helen. Help" we probably would have seen no lawsuit filed. The historic outcry, "Robbery. Help" offers no apparent springboard here for a successful dive into litigation. It is the addition of the invitation to "get a license number" which appellant seemingly objects to, taking the view that it constituted a request that he go outside where danger knowingly lurked in the form of a robber with a gun. We do not so find it. Certainly, in the excitement and confusion of an armed robbery, neither victim nor spectators can be expected to react as calmly as observers of a chess match. But excluding such consideration, there is nothing offered to show that any of the involved employees knew that the robber lurked outside. To the contrary, the statement "Let's get a license number" indicated only the reasonable belief that, having committed the crime, the robber would now be making his getaway.

Appellant and respondent agree that the rule stated in Restatement of Torts, section 344 has been adopted in California and is here applicable. This reads: "A possessor of land who holds it open to the public for entry for his business purposes

is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the . . . intentionally harmful acts of third persons . . . and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."[1]

Appellant lays great stress upon *Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114 [52 Cal.Rptr. 561, 416 P.2d 793]. Therein, the rule is thus stated (p. 121) : "Such a proprietor is, of course, not an insurer of the safety of his invitees, but he is required to exercise reasonable care for their safety and is liable for injuries resulting from a breach of this duty. (*Edwards* v. *Hollywood Canteen,* 27 Cal.2d 802, 809 [167 P.2d 729] ; *Hinds* v. *Wheadon,* 19 Cal.2d 458, 460 [121 P.2d 724] ; *Winn* v. *Holmes,* 143 Cal.App.2d 501, 503 [299 P.2d 994] ; *Vaughn* v. *Montgomery Ward & Co.,* 95 Cal.App.2d 553, 556 [213 P.2d 417] ; 65 C.J.S. § 45, p. 521 et seq. ; 2 Harper and James, The Law of Torts, § 27.12, pp. 1478-1488.) The general duty includes not only the duty to inspect the premises in order to uncover dangerous conditions (*Sexton* v. *Brooks,* 39 Cal.2d 153, 156 [245 P.2d 496] ; Rest.2d Torts, § 344, com. f ; 156 A.L.R. 1221), but, as well, the duty to take affirmative action to control the wrongful acts of third persons which threaten invitees *where the occupant has reasonable cause to anticipate such acts and the probability of injury resulting therefrom.* [Italics added.] (*Edwards* v. *Hollywood Canteen, supra,* 27 Cal.2d 802, 809-810 ; *Winn* v. *Holmes, supra,* 143 Cal.App.2d 501, 503-504 ; *Thomas* v. *Studio Amusements, Inc.,* 50 Cal.App.2d 538, 543 [123 P.2d 552] ; Rest.2d Torts, § 344 ; 70 A.L.R.2d 628, 651-653 ; Harper and Kime, *The Duty to Control the Conduct of Another,* 43 Yale L.J. 886 ; Note, 35 Mich.L.Rev. 843.) "

In *Taylor,* plaintiff invitee was in the bar of defendant's bowling alley when a male patron twice made indecent proposals to her within hearing of defendant's "bouncer." At closing time plaintiff was leaving the bar when the bouncer warned her not to go outside as "that goofball is out there." Plaintiff said she must go home, since she had to go to work, and went out to her car in defendant's parking lot where she

---

[1]The downgrading of distinctions based upon status of a visitor to another's premises, as set forth in *Roland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561], is not here pertinent.

was again accosted by the man who ultimately stabbed her with a knife. Not only did defendant know some "goofball" was waiting outside in its parking lot but plaintiff further showed there had been numerous altercations and assaults at the premises and offered to show defendant should have realized the "goofball" might physically attack her by offering to prove that within the six months beforehand there had been 160 arrests made at the bowling alley in response to 273 telephone calls to the police regarding assaults, mayhem, drunkenness and assorted other charges. Defendant's "bouncer" had not offered to escort plaintiff to her car or call for the police or otherwise protect her from the reasonably foreseeable possibility of physical assault on the premises. Under those circumstances, a judgment based on a verdict directed for defendant was reversed.

The present action is far different. It was not shown any of respondent's employees knew the robber was waiting outside; nor was it shown respondent's was a "tough joint" which continually attracted criminals and troublemakers. The opposite was true since appellant offered to show the area was well protected by police. No mention was made of other assaults, altercations, or any other event of a violent or criminal nature.

*Edwards* v. *Hollywood Canteen* (1946) 27 Cal.2d 802 [167 P.2d 729] cited and relied upon by *Taylor,* states the invitor's duty thus (p. 810) : ". . . the occupier is under a duty to protect visitors such as plaintiff by taking appropriate measures to restrain conduct by third persons *which he should be aware of and which he should realize is dangerous.*" (Italics added.) Here, while respondent, through its employees, was made legally aware an armed robbery had occurred, no basis was stated for finding that it was, or should be, aware that the robber thereafter would remain outside, would make an unprovoked, ruthless attack upon appellant or, in fact, would do anything but hurriedly abscond.

Respondent contends that, as a matter of law, appellant assumed the risk once he left the comparative safety of the restaurant's interior for the surrounding area outside and that he also was contributorily negligent. No assumption of risk as a matter of law appears. Appellant did not know he was entering a place of danger when he went outside nor, if danger existed, did he appreciate the nature or extent of it. These elements must conclusively be established by his lawyer's opening statement if we are to find the defense existed

as a matter of law. *Vierra* v. *Fifth Avenue Rental Service* (1963) 60 Cal.2d 266, 271 [32 Cal.Rptr. 193, 383 P.2d 777]; *Shahinian* v. *McCormick* (1963) 59 Cal.2d 554, 567 [30 Cal. Rptr. 521, 381 P.2d 377]. We do not so find.

In like manner, while there may be present the facts needed to allow the conclusion to be drawn that appellant was contributorily negligent, such does not inevitably follow from the facts outlined by his attorney.

Appellant raises the so-called ''rescue doctrine'' as affording an excuse for his assumption of risk and contributory negligence. Under our conclusions this requires no discussion.

■ Appellant claims the ''social value'' of his conduct entitles him to a sympathetic bending of the law to grant him relief. Thus, he responded to a call for help, he says, and should not be left out in the legal cold. The other side of the coin is obvious. If a person is assaulted and cries ''help,'' inducing response from a stranger who is also assaulted, is the initial victim to be held liable to the good Samaritan? We think not. The Legislature recently has seen fit to afford relief to the Samaritan-minded by enacting title 5 of part 4 of the Penal Code (§ 13600 et seq.) entitled ''Indemnification of Private Citizens.'' California thus allows recovery from the state. Further provision for relief is made in title 2, division 3, part 4, chapter 5 of the Government Code (§ 13960 e seq.) entitled ''Victims of Crime.'' Under these statutes an injured good Samaritan is not left without relief.

Judgment for respondent is affirmed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied August 15, 1969, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1969. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.