Filed 4/9/15  P. v. Buchanan CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KEITH BUCHANAN,<br><br>    Defendant and Appellant. | A138157<br><br>(Contra Costa County<br>Super. Ct. No. 51210384) |

**I.**

**INTRODUCTION**

Appellant was convicted by a jury of first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a)); evading a police officer (Veh. Code, § 2800.2); and grand theft of personal property (Pen. Code, § 487).  The trial court sentenced appellant to nine years in state prison and also ordered him to pay a $500 fine to the public defender's office as reimbursement for attorney fees.

Appellant contends that the trial court committed reversible error by admitting hearsay evidence at trial.  He also contends that the attorney fee reimbursement order was improper and that he was erroneously denied presentence conduct credits.  We affirm the judgment, but reverse the attorney fee order and remand this case for the trial court to correct its sentencing errors.

1

## STATEMENT OF FACTS

On May 1, 2012, Christy Jensen left her Walnut Creek home at around 10:00 a.m. to run errands. When she returned an hour and a half later, a white Honda was parked near her driveway and a man was standing at her front door. Jensen slowed down in front of her house and the man turned around and looked at her. Instead of pulling into her garage, Jensen drove past her house, parked on the street, and called her across-the-street neighbor, Curt Snarr.

While on the phone with Jensen, Snarr looked out his front door. Nobody was standing at Jensen's door, but the gate to her back yard swung shut. Then, Snarr saw through windows at the front of the Jensen home that a person was darting around inside. Snarr told Jensen to stay in her car and called 911 to report a burglary in progress. At the request of the 911 operator, Snarr went outside to get a description of the Honda. A man came out of a gate to Jensen's back yard with his arms full of personal property, including a computer and pillow case filled with items. Snarr decided to confront the man, saying "hey, buddy" as he approached. The man turned and looked at Snarr, then quickly threw the property in the car, jumped in and drove away.

At approximately 11:30 a.m., Walnut Creek police officer Paul Welge was on patrol in a marked vehicle when he received a report of the in-progress burglary at Jensen's home and a description of the suspect and the car. While on route to the scene, Welge stopped at an intersection and noticed a white Honda facing him at the stop sign and the driver who matched the general description of the man who burgled the Jensen home. Welge pulled his patrol car in front of the Honda to block its path, activating his red and blue overhead lights. The Honda driver accelerated around the police car, ran a stop sign, turned left and sped away at around 50 miles per hour. After calling for assistance and activating his lights and siren, Welge gave chase. The Honda driver sped through stop signs, hit a median, and drove through red lights at 80 to 90 miles an hour. Ultimately Welge was ordered to cease the chase for public safety reasons.

At approximately 11:45 a.m., Barbara Corsi was standing outside a home in Concord preparing to conduct a real estate brokers' tour, when she was startled by a white Honda that sped down the street and made a sudden screeching stop in front of the house. After the driver got out of the car and jumped a solid fence at the end of the street, Corsi called 911.

Meanwhile, Walnut Creek police detective Michael McLaughlin heard a radio update that Concord police located the Honda and went to that neighborhood to help look for the suspect. He came across appellant walking on the sidewalk away from the dead-end side of a residential street. Appellant, who matched the suspect's description, was sweaty and out of breath and had plant material in his hair. McLaughlin exited his car, identified himself and told appellant to sit on the ground. Appellant did not sit but looked to his left and then his right. McLaughlin drew his weapon and repeated the order to sit. Appellant complied and was placed under arrest.

Jensen was escorted to the scene of appellant's arrest where she identified him as the person she saw at her front door, stating "[t]hat's him without a shadow of a doubt. I'm 100 percent sure that's him." Another officer drove Snarr to the scene where he identified appellant with "100 [percent] certainty." Corsi was also escorted to the arrest scene and indentified appellant based on his clothing and appearance, although she had not previously seen his face. Finally, when officer Welge arrived at the scene, he identified appellant as the driver of the white Honda Civic who led him on a high speed chase.

Jensen also identified the white Honda as the car that was parked outside her house and her personal property inside that car. Appellant was not the registered owner of the Honda. However, evidence presented at trial linked appellant to a cell phone that police found on the front passenger seat of the car. An inspector employed by the district attorney used a forensic computer program to recover the contact list from that cell phone which contained telephone numbers for "Mom," "Celeste," "Celeste Buchanan," and "Eric." Those names and telephone numbers matched information that appellant

3

provided on a "Visiting List" form that he completed when he was booked into jail on March 1, 2012.

At trial, appellant presented an alibi defense. Appellant's friend, Adam Farren, testified that appellant arrived at his residence at 10:30 p.m. on April 30, 2012, and did not leave until 11:30 or 11:45 the following morning.

## III.

## DISCUSSION

### A. The Visiting List

Appellant contends that the trial court committed reversible error by overruling his hearsay objection to People's Exhibit 4, the "Visiting List" that was generated for appellant when he was booked at the county jail on May 1, 2012. We review the trial court's ruling under the abuse of discretion standard. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1011.)

#### 1. Background

Exhibit 4 is a preprinted form titled "Contra Costa County Detention Facilities Visiting List." A person who signed appellant's name to that form, handwrote the names, relationships and contact information for visitors that appellant wanted to see. A different person handwrote official booking information about appellant, including his booking number, booking date and housing unit, and also completed a column of the printed form indicating whether each potential visitor was authorized or denied the right to visit appellant at the jail.

At a pretrial hearing to address whether the Visiting List could be introduced into evidence, the prosecutor presented testimony from county sheriff employee Nicholas Muller, a facility training officer at the West County Detention Center. Muller identified the exhibit as a "document 080," which is made available to inmates at two deputy stations in the detention facility. The form consists of an original top page and two carbon copies. An inmate requesting visitors may complete the form when he picks it up at the deputy station or he can take it back to his cell to complete and return later.

4

Muller testified that when an inmate returns a completed Visiting List to the deputy, the officer verifies that the inmate is the person identified on the form by checking his name and booking number. In addition, the deputy can look at the inmate management card on the computer to match the face of the person turning in the form with the person identified on that document. Once it is established that the inmate has submitted his own proper form, the deputy uses the computer to identify visitors who are on probation, have been in custody, or have outstanding warrants. Then the visitor information is entered into the computer by name, relationship to the inmate, street address, phone number and birth date. After the data entry is completed, the original top page of the form is placed in the inmate's booking folder, one copy is sent to the classifications department and the bottom copy is returned to the inmate.

Under cross-examination, Muller testified that he was not the deputy who accepted and processed appellant's Visiting List. Muller also acknowledged that these forms are not necessarily processed at the moment they are received, explaining: "Initially when the inmate walks up with the form, we verify that is the inmate. And depending on module activity, it could be entered [later] in the shift and then returned back to him."

At the conclusion of Muller's testimony, the trial court ruled that appellant's Visiting List was admissible as both a business record and an official record. (Evid. Code, §§ 1271, 1280.)[1] Considering the requirements of these two hearsay exceptions

---

[1] Evidence Code section 1271 (section 1271) states: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

together, the court found that Muller's testimony established that the document was created in the ordinary course of business of the Sheriff's office; that the writing was created at or near the time of the pertinent "act," which was the recording of visitors that the inmate wanted to have contact with; and that the document was trustworthy. In light of these findings, the court concluded that sufficient preliminary facts were established to allow the Visiting List to be presented to the jury.

### 2. Analysis

Appellant contends the business record exception does not apply to his Visiting List because the information recorded on that form was not provided by an employee of the detention facility. According to appellant, the hearsay exception for business records only applies when the person who provided the information in the document had a business duty to report that information. (Citing *Taylor v. Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 126 (*Taylor*).) By the same token, appellant contends, the fact that the inmate provides the visitor information recorded on the Visiting List precludes application of the official record hearsay exception, which only applies when "the writing was made by and within the scope of duty of a public employee." (§ 1280, subd. (a).)

The problem with these arguments is that appellant mischaracterizes the visitor information that he provided on his Visiting List as the hearsay evidence that was admitted into evidence at trial. " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing *and* that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a), italics added; see, e.g., *In re Richard W.* (1979) 91 Cal.App.3d 960, 972 [deposit slip not hearsay when offered not as proof of truth but as circumstantial evidence connecting defendant to crime].)

---

Evidence Code section 1280 (section 1280) states: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

Here, appellant's visitor information was not hearsay evidence because the Visiting List was not offered to prove that appellant's visitor information was substantively true or accurate. Rather, the Visiting List was offered solely to prove that appellant made the visitor requests that are recorded on that document. "[T]he hearsay rule does not forbid the introduction of evidence that a request has been made when the making of the request is significant irrespective of the truth or falsity of its content. [Citations.]" (*Taylor*, *supra*, 65 Cal.2d at p. 125.)

Thus, if appellant had made his visitor requests directly to a deputy at the detention facility, that deputy could have testified about the appellant's requests without raising any hearsay issue at all. The reason a hearsay issue did arise in this case was because the People used documentary evidence to prove that appellant made visitor requests when he was booked at the detention facility. The trial court's findings supported its conclusion that this documentary evidence was admissible under the business record and official record hearsay exceptions. (§§ 1271, 1280.) Muller's testimony substantially supports the trial court's findings that: (1) in the regular course of the detention facility's business, public employees accept and process inmate visitor requests; (2) the writing evidencing the acceptance of appellant's visitor request was generated when that request was made; and (3) there are sufficient indicia establishing that the writing is a trustworthy recording of the request that appellant made.

Appellant contends that the Visitor List is similar to a report that was deemed inadmissible hearsay in *Daniels v. Department of Motor Vehicles* (1983) 33 Cal.3d 532, 537 (*Daniels*). The *Daniels* court held that an accident report filed with the Department of Motor Vehicles (D.M.V.) was not admissible under the business record hearsay exception to prove that the accident happened. The court reasoned that, "[a]lthough it may be the regular course of business for the D.M.V. to receive the report, it undoubtedly is not in the regular course of business for the citizen author to make such a report. And, it is this aspect of the report that bears on the trustworthiness factor contemplated by this exception to the hearsay rule." (*Id*. at pp. 537-538.)

Appellant contends this case is similar to *Daniels*, *supra*, 33 Cal.3d 532 because, although it may be in the regular course of the detention facility's business to receive a Visiting List, it is "not in the regular course of inmates['] business to fill out such forms." Again, appellant has lost sight of the purpose of this evidence. In contrast to the accident report at issue in *Daniels*, the visitor information that appellant provided was not submitted for the hearsay purpose of proving the truth of those statements, i.e., that appellant wanted to see those visitors or that those visitors were who appellant claimed they were. Rather, the pertinent fact was the making of the statement itself and, as appellant concedes, it is in the regular course of the detention facility's business to elicit the names and contact information for visitors from inmates who are booked at that facility.

Aside from his erroneous arguments about the nature of the hearsay evidence at issue in this case, appellant does not otherwise dispute the trial court's findings establishing the requirements of the two hearsay exceptions for admitting the Visiting List into evidence at trial. Therefore we affirm the trial court's discretionary ruling. Furthermore, even if there was error, appellant has failed to establish a reasonable probability that he would have obtained a more favorable result if the Visiting List had not been admitted into evidence. (See *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 76; *People v. Watson* (1956) 46 Cal.2d 818, 836 [erroneous admission of evidence reviewed under *Watson* prejudice standard].) In this regard, we disagree with appellant's notion that evidence linking him to the cell phone was crucial to establish identity. Without exception, the percipient witnesses identified appellant as the perpetrator of these crimes.

## B. The Attorney Fee Reimbursement Order

At appellant's sentencing, the trial court found that appellant was not eligible for probation, refused to strike a prior strike conviction and sentenced appellant to a total term of nine years in prison. The court also imposed several fees and fines which included an order that appellant "reimburse the county for the costs of his services for the Public Defender for $500." Appellant contends this order must be reversed because the

8

trial court failed to conduct a noticed hearing and make findings required by Penal Code section 987.8 (section 987.8).

Section 987.8 "empowers the court to order a defendant who has received legal assistance at public expense to reimburse some or all of the county's costs." (*People v. Viray* (2005) 134 Cal.App.4th 1186, 1213-1214.) "Under subdivisions (b) and (c) of the statute, an order of reimbursement can be made only if the court concludes, after notice and an evidentiary hearing, that the defendant has 'the present ability . . . to pay all or a portion' of the defense costs. [Citations.] If this finding is made, 'the court shall set the amount to be reimbursed and order the defendant to pay the sum to the county in the manner in which the court believes reasonable and compatible with the defendant's financial ability.' [Citation.]" (*People v. Polk* (2010) 190 Cal.App.4th 1183, 1205.)

The People concede the trial court failed to comply with the requirements of section 987.8, and they stipulate that appellant did not waive the error by failing to object at the sentencing hearing. (See *People v. Viray*, *supra*, 134 Cal.App.4th at p. 1217; *People v. Lopez* (2005) 129 Cal.App.4th 1508, 1537.)

The proper remedy for this error is to remand the matter for a hearing to determine appellant's ability to pay as required under section 987.8. (*People v. Flores* (2003) 30 Cal.4th 1059, 1063; *People v. Prescott* (2013) 213 Cal.App.4th 1473, 1477.)

## C. Good Conduct Credits

At sentencing, the trial court did not award appellant any custody credits. Citing Penal Code section 1170.12, subdivision (a)(5), the court stated that "custody credits at this point are not calculated but reserved to state prison." The People concede this was error.

Penal Code section 4019 governs the calculation of presentence conduct credit. "At the time of sentencing, credit for time served, including conduct credit, is calculated by the court. The 'total number of days to be credited' is memorialized in the abstract of judgment [citation] and 'shall be credited upon [the defendant's] term of imprisonment . . . .' [Citation.] The credit 'in effect, becomes part of the sentence.' [Citation.]" (*People v. Duff* (2010) 50 Cal.4th 787, 793.)

9

# IV.

## DISPOSITION

The order for reimbursement of defense attorney fees is reversed and this case is remanded for a proper consideration of the attorney fee issue, and to calculate appellant's conduct credit. In all other respects, the judgment is affirmed.

_____
RUVOLO, P. J.


We concur:


_____
RIVERA, J.


_____
STREETER, J.